MacMANUS et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9110.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1942.

John J. Sloan, of Detroit, Mich., for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The single question presented for decision is whether for tax purposes the petitioner was a trustee in four separate and independent trusts originally set up by his father, Theodore F. MacManus, or whether, by the several mutations subsequent to the original creation of the trusts, they had become merged into a single trust with multiple beneficiaries. The question is important because if there is but a single trust, as the Commissioner of Internal Revenue ruled, and the Board of Tax Appeals found, a substantial additional tax is payable. If there are four trusts as contended by the petitioner, the additional tax is but nominal. There is no controversy about the computations.

On July 18, 1923, Theodore F. MacManus created six identical revocable trusts, one for each of his six children, with the Detroit Trust Company as trustee in each. Unless previously revoked the trusts were to terminate on the grantor's death when the principal and accumulations were to be paid over to each beneficiary. The following year, by amendment to each of the trusts, they were made irrevocable, the grantor, however, reserving to himself the power to designate beneficiaries within certain limits. Two of the children died in 1930 and 1931 respectively, and the assets of each of their trusts were distributed to their distributees or heirs at law, as provided in the trust instruments. Early in 1934 the grantor, being dissatisfied with the handling of the estates by the trustee, desired to terminate or reconstitute the trusts and to rehabilitate the assets. The carrying out of his purpose was preceded by family conferences and resulted in the transfer of the assets of all four trusts to the petitioner who executed a declaration of trust wherein he acknowledged holding the corpus as trustee for his two sisters, his brother, and himself, share and share alike. It is with the interpretation of this instrument that the controversy mainly is concerned. Prior to its execution, however, Theodore F. MacManus on April 20, 1934, wrote to the petitioner advising him of his intention and purpose in reconstituting the trusts. Since the Board found the petitioner's declaration ambiguous and resort to extrinsic aids to its interpretation necessary, the precise terms of this communication likewise becomes important, and both it[1] and the instrument itself[2] are, insofar as they bear

[1] "John:

"As you are aware, we have had several discussions during the past year with the Trust Co. concerning the arrangement with them. They have probably done their best—as they see it—but Messrs. Hammel and Sloan and myself are agreed that your interests and those of your brother and sisters will be best served, if we take the whole matter in hand ourselves. If the Trust Co. is eliminated there is a good chance that the four trusts can be rehabilitated which is, of course, my dearest wish. I am advised that the simplest way of relieving the Trust Co. of the four trusts is to change the beneficiary provision from Theodora, Alice, and Teddy to you. You would then act as sole trustee and all clerical and other signature provisions would be executed through you. If these

are the mechanics to be followed it is agreeable to me. I want to impress upon you most earnestly, however, that the original spirit behind the creation of the trust is not changed. Our distinct and definite understanding is that the four trusts are to remain intact and that your own, Theodora's, Alice's, and Teddy's positions will be exactly the same. The details and mechanics of the matter I leave to you in consultation with Mr. Hammel and Mr. Sloan.

"Father."

[2] "Theodore F. MacManus, the Grantor in four (4) Trust Agreements dated July 18, 1923, and later amended, in which trusts the Detroit Trust Company, a Michigan Corporation, is trustee, and in which Theodora MacManus, Alice W. MacManus, Edwin Benedict MacManus, and John R. MacManus, are the respec-

upon the issue involved, printed in the margin.

That prior to May 9, 1934, there remained four separate and independent trusts of the six originally created is not questioned. In the instrument subsequently executed by the son John, for the benefit of himself, sisters and brother, there appears to be indiscriminate reference to a singular "trust" and to plural "trusts." While attaching no great significance to this aspect, the Board considered that it left the question of the grantor's intent unanswered. It concluded from other relevant documents that if the father or son intended to create more than one trust they failed to give this intention adequate expression. Finding that a single capital account was set up on the books of the trustee in his name as trustee, by the accountant in charge, and that but one fiduciary return was filed, executed by the trustee, which listed the four beneficiaries each as having a 25% share in the income, the Board concluded that this evidenced a practical construction of the trust instrument, both by the trustee and the accountant who had been his father's consultant. It therefore concluded that there was one trust and not four.

The reasoning leading to this conclusion was that the petitioner's contention as to the multiple character of the trusts necessitated a preliminary assumption that the administration of the trust was carried on in a manner inconsistent with the purpose and intent of the original grantor, and so to hold that four trusts existed would com-

tive beneficiaries, has indicated that under the powers reserved to him in said trusts and amendments, he is to make me, the said John R. MacManus the sole beneficiary in each of said four (4) trusts.

"The purpose of so changing the beneficiaries in said Trusts is to facilitate a termination thereof by unanimous consent of all the parties in interest so that said Trusts may be continued in a broader form to the end that if possible said Trusts may be rehabilitated, I, the said John R. MacManus, supplanting the Detroit Trust Company as trustee.

"I therefore acknowledge, pursuant to a common understanding with all parties in interest, that I shall hold all of the corpus and income of said trusts as trustee for Theodora MacManus, Alice M. MacManus (now Alice M. Fox), Edwin Benedict MacManus and John R. MacManus, share and share alike.

"It is understood that the assets of said trust may be by me at any time converted into cash or exchanged for other securities and that funds so realized may be carried by me in my own name individually or as trustee, and that I may make investments from time to time in business ventures or speculative ventures, but whether carried in my name individually or as trustee, it is understood that all of said assets and all the emoluments and dividends and profits thereof are and shall be the property of the four (4) persons hereinbefore named in the proportions hereinbefore indicated.

"It is understood that I may upon request of Alice Holdridge MacManus, the mother of all of the beneficiaries hereinbefore named pay to her from time to time any part of the corpus and income of said trust estate or estates, and that all such payments shall be deemed to be the equal contribution of all the beneficiaries herein named, and that the receipt to me of the said Alice Holdridge MacManus shall be my full acquittance to the extent thereof.

"It is further understood that I may from time to time with the consent of Alice Holdridge MacManus advance to said beneficiaries a part of the corpus or income of said trusts, the making of the said advancement being however within my sole discretion, and the amounts so advanced shall be a charge against such beneficiaries' interest.

"I further agree that if, as and when any dividends or profits are declared on any investments of such trust funds and paid to me, I may divide the same equally among the persons hereinbefore named, if at that time I deem such division advisable or I may withhold the same and credit to account of beneficiaries if I deem it expedient for the benefit of such trusts.

"It is further agreed that I shall be responsible only for the exercise of good faith and to account to the four (4) beneficiaries named above.

"It is further understood that this trust shall remain in full force and effect until the death of the survivor of Theodore F. MacManus and Alice Holdridge MacManus, his wife. On termination, the entire assets of said trust estate shall pass to and be paid over to the beneficiaries thereof, share and share alike, and in the event of the death of any such beneficiary prior to termination of trust such share shall be held in trust till termination, then pass to his or her distributees; that is to say, the persons who, by the statute of distributions, shall be entitled to share his or her intestate personal estate and in the proportions in such statute provided."

pel an inference that the son and the grantor's adviser, though fully aware of the father's intention to erect four trusts, deliberately accomplished the reverse. This the Board was not prepared to do. The argument is not persuasive and is unsound. Insofar as it bases conclusion upon an assumed practical construction of an ambiguous instrument it utilizes but an unilateral construction thereof. Theodore F. MacManus is dead. It is his intention that is conceded to be controlling. There is nothing in the record to indicate that he knew, consented to, or acquiesced in the treatment of trust accounts as though of a single trust, and it would be novel doctrine to resolve an ambiguity by relying upon a construction given to an instrument which it not mutual to all parties concerned therewith.

Assuming ambiguity, we turn to a consideration of the grantor's letter to his son John. It indicates his sole purpose to be a change of trustee because of his dissatisfaction with the results obtained by the Trust Company. He is advised that the simplest way of relieving the Trust Company is to change the beneficiary provision from Theodora, Alice and Teddy, to John, who would then act as sole trustee. Then to avoid any misunderstanding or confusion, he says, "I want to impress upon you most earnestly, however, that the original spirit behind the creation of the trust(s) is not changed. Our distinct and definite understanding is that the four trusts are to remain intact and that your own, Theodora's, Alice's and Teddy's positions will be exactly the same." Had he stopped there, no contention could reasonably have been made that it was his purpose to convert the separate trusts into one. The final sentence of the letter, however, says, "The details and mechanics of the matter I leave to you in consultation with Mr. Hammel and Mr. Sloan." It is upon this grant of authority that the Board relies in concluding that the "administration" (book treatment) of the estate was in consonance with the grantor's intention.

The conclusion will not bear analysis. The "details and mechanics of the matter" certainly do not, in the ordinary understanding of the phrase, comprehend departure from the clearly expressed purpose that the four trusts are to remain intact. However the purpose of the grantor may have been carried out, whether by following the recited suggestion of Hammel and

Sloan, or upon other advice, whether by one trust instrument or by four, whether by treating the corpus as it had theretofore been treated as single or divided into four equal shares, whether the instrument was to be a trust declaration by the petitioner or an agreement between the grantor and his beneficiaries, these are "details and mechanics of the matter," but none would cause departure from the grantor's clearly expressed purpose.

In this approach to the interpretation of the trust instrument and the purpose of Theodore MacManus, we assume, as did the Board and respondent's counsel in argument, that our decision in Buhl v. Kavanagh, 6 Cir., 118 F.2d 315, is sound, and that when the original grantor undertakes to reshape or remold a trust, the better to conform with his ideas, the original trustor is still the grantor of the trust estate, regardless of the form that the reshaping or remolding of the trust may take.

That the accountant, for the purpose of convenience, set up but one capital account, is unimportant, for where there is an intention to create (or continue) separate trusts the fact that "the trusts" are kept in one fund does not necessarily defeat the intention and require the conclusion that there is but a single trust, United States Trust Co. v. Commissioner, 296 U.S. 481, 487, 56 S.Ct. 329, 80 L.Ed. 340, for an undivided interest in property may constitute the corpus of a trust and there may be several trusts where there is but one corpus. Once an estate is created no subsequent course of dealing can change its nature. McCrory v. Commissioner, 5 Cir., 69 F.2d 688. True it may be that the trustee's treatment of the corpus may throw light upon the intention of the grantor, as in Huntington Nat'l Bank v. Commissioner, 6 Cir., 90 F.2d 876, where other criteria coincide, but this argument does not go so far as to indicate that such treatment controls where there are opposing indicia of the grantor's purpose, clearly expressed.

While the Board laid no great stress upon the seemingly indiscriminate use of singular and plural in reference to the trust estate, much was made of it in argument by counsel for the respondent, and so analysis of the trust declaration becomes important. It will be observed that the petitioner recites therein that Theodore F. MacManus was the grantor in four trust agreements dated July 18, 1923, later amended, and that under

674

the power reserved to him he is to make "the said John R. MacManus the sole beneficiary in each of said four (4) trusts," the purpose of changing beneficiaries "in said trusts" being to facilitate a termination thereof by unanimous consent of all the parties in interest so that "said trusts" may be continued in a broader form. The petitioner then acknowledges that pursuant to a common understanding with all parties in interest, he will hold the corpus and income "of said trusts" as trustee. Then follows a provision authorizing the conversion of assets into cash and its reinvestment. Here is the first reference to the trusts in the singular, but immediately thereafter is a provision authorizing the payments of money to the mother of the beneficiary and wife of the grantor, with reference to the corpus and income "of said trust estate or estates," and a following provision for advances to the beneficiary of a part of the corpus or income "of said trusts." The remaining provisions of the instrument contain several references to the trust in the singular, but intermingled with references to plural trusts.

It thus will be seen that in the declaration of the trustee there is a clear recognition of the purpose of Theodore F. MacManus to continue the existing trusts with but one change, and that in the name of the trustee, and that the predominant thought throughout the instrument is that there are four trusts and not one. When it is understood that the corpus of the trust was in solido and that the trust estate of each of the beneficiaries was an undivided interest in such corpus, the occasional departure from the plural to the singular is easily understood. The concept predominantly in the mind of the draftsman in one recital may have been the plural trusts, in another the unitary character of the corpus. Upon such finely woven distinctions the clearly expressed purpose of the actual trustor is not to be set aside.

It is true that on questions of fact we are bound by the findings of the Board, Tracy v. Com'r, 6 Cir., 53 F.2d 575, if not contrary to the indisputable character of the evidence or if the evidence is legally sufficient to sustain such finding. The question of the grantor's intention may be a question of fact based upon evidence or inference reasonably flowing from such evidence. Our search of the record fails to disclose any evidence to indicate the purpose of the settlor to merge the four previously existing trusts into one trust, or reasonably to warrant an inference of such purpose. There is, on the contrary, a rule of construction based on reason and human experience to the effect that an existing condition is presumed to continue until there is proof that some change has occurred or is contemplated. In the interpretation of the trust declaration of the petitioner we assume the question to be one of law, and that upon it, we are not circumscribed by the Board's conclusions.

The decision of the Board is reversed and the cause remanded for further proceedings consistent herewith.