**MacMANUS' ESTATE et al. v. COMMIS-SIONER OF INTERNAL REVENUE.**

**No. 10574.**

United States Court of Appeals
Sixth Circuit.

Jan. 31, 1949.

---

[1] Ill.Const.1870, art. II, Sec. 5, Smith-Hurd Stats.

·McALLISTER, Circuit Judge, dissenting.

———◆———

John J. Sloan, of Detroit, Mich. (John J. Sloan, of Detroit, Mich., on the brief), for petitioners.

S. Dee Hanson, of Washington, D. C. (Theron L. Caudle, Lee A. Jackson, and L. W. Post, all of Washington, D. C., on the brief), for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Petitioner seeks a review of the decision of the Tax Court ordering a deficiency assessment in estate tax in the amount of $59,143.85 against the Estate of Theodore F. MacManus, deceased. 8 T.C. 330. The issue involved is whether the grantor of four trusts for the benefit of his four children retained the power to change the beneficiaries so that the value of the corpus of each of the trusts should be included in the gross estate of the grantor for purposes of the Federal estate tax. The Tax Court ruled in the affirmative.

The material facts presenting the issue may be summarized as follows: On July 18, 1923, Theodore F. MacManus created six revocable trusts, one for each of his six children. The trusts were identical in form except that a different child was named as beneficiary. The Detroit Trust Company was the trustee in all trusts. On December 30, 1924, the grantor executed an amendment to each of the trusts surrendering to the trustee all right of revocation under the instruments of July 18, 1923. However, he reserved to himself the power to designate as beneficiaries, in place of the named beneficiaries, any person bearing a certain relationship to the named beneficiary. Two of the six beneficiaries died in 1930 and 1932, and the assets of the two trusts created for their benefit were distributed under the terms of the trusts to their heirs at law.

In 1930, the grantor became dissatisfied with the Detroit Trust Company as trustee. Following numerous conferences between the grantor, his son John R. MacManus, other members of the family, and his attorney, the grantor on April 20, 1934, wrote to his son John R. MacManus that for the purpose of protecting the interest of the beneficiaries and to rehabilitate the four trusts it seemed advisable to eliminate the Trust Company, which could

be done by changing the beneficiary provisions from the three other children to John who would then act as sole trustee.

On May 9, 1934, John R. MacManus executed a declaration of trust which referred to the four original trust agreements of July 18, 1923; stated that the grantor had indicated that under the powers reserved to him in said trusts and amendments he was making John R. MacManus the sole beneficiary in each of the four trusts and that the purpose of so changing the beneficiaries was to facilitate a termination thereof by unanimous consent of all the parties in interest so that the trusts could be continued in a broader form to the end that if possible said trusts might be rehabilitated with John R. MacManus supplanting the Detroit Trust Company as trustee; and which acknowledged, pursuant to a common understanding with all the parties in interest, "that I shall hold all of the corpus and income of said trusts as Trustee for Theodora MacManus, Alice M. MacManus (now Alice M. Fox), Edwin Benedict MacManus and John R. MacManus, share and share alike." On May 10, 1934, Theodore F. MacManus executed an amendment to the three trusts for Theodora, Alice and Edwin Benedict, changing the beneficiary therein to John R. MacManus.

Under date of May 11, 1934, John R. MacManus as beneficiary, Theodore F. MacManus as maker, together with his wife, and the Detroit Trust Company as trustee, executed an instrument styled "Release and Consent to Transfer Corpus of Trust Estate and Discharge of Trustee's Obligations" which referred to the original trusts, the amendments of December ·30, 1924, and May 10, 1934, the decision of the parties in interest that the corpus of the trust estate as held by the Detroit Trust Company as trustee should be transferred to John R. MacManus and all of the duties and responsibilities of the Detroit Trust Company as trustee should cease and terminate, and by which John R. MacManus, Theodore F. MacManus and his wife, being all of the parties having a present interest in the corpus of the trust estate, acknowledged the receipt and delivery of all the property and assets constituting the corpus of the trust estate and the income thereon. The closing paragraph stated that it was agreed that the Detroit Trust Company as trustee was thereby discharged and released from any and all obligation of every nature growing out of the trust agreements and amendments thereto, and that all of the rights, powers, benefits and interest in the trust estate "shall be and hereby are transferred and assigned to John R. MacManus, and in all respects, insofar as the Detroit Trust Company as Trustee is concerned, said agreements and /or supplements, and/or all right, title, interest, obligation, responsibility and liability with respect thereto and/or the corpus of the Trust Estate covered thereby, including all accumulations thereto, shall hereby cease and terminate, and the said Theodore F. MacManus, Alice Holdridge MacManus and John R. MacManus agree, and do hereby indemnify the said Detroit Trust Company, as Trustee, from any and all liability in connection therewith."

On December 29, 1937, Theodora MacManus, then Theodora MacManus Toluboff, assigned all of her interest in the trust estate to her sister and two brothers, and thereafter filed a gift tax return covering such transfer and paid a gift tax thereon in the amount of $1,970.59. No claim for refund of this tax was ever filed and no refund has been made.

Between June 1, 1935 and October 1, 1938, John R. MacManus, as trustee, purchased with trust funds certain annuity contracts based on the life of Theodore F. MacManus. In connection with these purchases, Theodore F. MacManus wrote the New York Life Insurance Company that John R. MacManus was in full control of the trust estate and "I have no interest in said trust, but for the purpose of complying with your request, the application of the said John R. MacManus for said annuity has my full approval, * * *" He also wrote to the Equitable Life Assurance Company of the United States— "I hereby state that if I be deemed to have any interest in the trust of May 9, 1934, the purchase of a contract of annuity on my life meets with my approval, * * * I expressly affirm, however, that I have no

interest whatsoever in said trust of May 9, 1934."

Theodore F. MacManus died on September 12, 1940. The Tax Court held that the decedent had retained the right and power to change the beneficiaries of the trust, which brought the case within the language of § 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c), and rendered the trust corpus subject to the estate tax. The petitioner contends that the declaration of trust made by John R. MacManus on May 9, 1934 constituted a new trust wholly independent of the original trusts, that the original trusts were wiped out together with the powers reserved therein to the decedent, and that the new instrument eliminated all interests, rights and powers of the decedent in the trust corpus held by John R. MacManus.

We are of the opinion that the ruling in this case is controlled by the prior decision of this Court in MacManus v. Commissioner, 6 Cir., 131 F.2d 670, 673. In that case we construed the same trusts set up by the instruments of July 18, 1923, December 30, 1924, May 9, 1934 and May 10, 1934 and, with respect to the income tax question involved in that case, held that the four separate and independent trusts originally set up by Theodore F. MacManus had not become merged into a single trust with multiple beneficiaries, but continued to exist as separate trusts with a change from the Detroit Trust Company as trustee to John R. MacManus trustee. The reasons which led us to that conclusion are fully stated in the opinion in that case and need not be restated here. We adhere to that ruling. We agree with petitioner that that decision is not res judicata of the present controversy, in that the issues are not the same and because certain additional facts bearing on the different issue herein involved are presented and must be considered. But our construction of the legal effect upon the trusts created and affected by the four instruments referred to, regardless of the phase of taxation which may be under consideration in any given controversy, is controlling and should be followed. In that opinion it is stated that the grantor's letter to his son John indicated "his sole purpose to be a change of trustee because of

his dissatisfaction with the results obtained by the Trust Company," and, in the closing paragraphs it is again stated—"It thus will be seen that in the declaration of the trustee there is a clear recognition of the purpose of Theodore F. MacManus to continue the existing trusts with but one change, and that in the name of the trustee, and that the predominant thought throughout the instrument is that there are four trusts and not one." If the change in the trustee was the sole change intended by the grantor, it follows that the reservation of power in the grantor to change the beneficiaries which existed in the original trusts continued to exist in the same trusts after the change of trustee made effective by the instruments of May 9 and May 10, 1934.

■ Petitioner contends that this result does not follow because Theodore F. MacManus released those reserved powers by the instrument which he, his wife, John R. MacManus and the Detroit Trust Company executed under date of May 11, 1934, briefly summarized hereinabove. We do not construe that instrument as having that effect. Its caption indicates that insofar as the grantor was concerned it was merely his consent to a transfer of the corpus of the trust estates from one trustee to another and a release of the first trustee's obligations. The wording of the instrument clearly indicates the sole purpose of making such a transfer and of releasing the Detroit Trust Company of any and all liability with which it might be charged by reason of its acts as said trustee. The closing sentence contains an indemnifying agreement. There is no reference to any release of powers previously reserved in the trusts to the grantor. If it was the purpose of the parties thereto to release such reserved rights, it would certainly have been so stated in express terms and not left to inference or construction.

■ Petitioner also contends that the letters which Theodore F. MacManus wrote to the two insurance companies in connection with the purchase of annuity contracts on his life show that he had no reserved powers in the trust estates. In both

instances he wrote that he had no interest in the trust. We do not give to those letters the broad effect attributed to them by petitioner. We agree with the view taken by the Tax Court that the decedent's alleged disclaimer of any "interest" in the May 9, 1934 trust could well apply to his pecuniary interest rather than to any reserved rights and powers to change the beneficiaries, and that a layman might so express himself without taking into consideration such reserved powers. In any event, his opinion or conclusion in the matter does not control the legal effect of instruments previously executed.

■ Petitioner further contends that the assignment by Theodora MacManus Toluboff on December 29, 1937 of her interest in the trust estate to her sister and brothers with the payment of a gift tax thereon also demonstrates that the grantor retained no right to change the beneficiaries, for the reason that if such right was still reserved the change from Mrs. Toluboff to her sister and brothers could have been made by the grantor without the necessity of paying a gift tax. This, however, is doubtful. Such a change might have been a taxable transaction. The application of the gift tax statute was in considerable doubt in 1937. Compare Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed 20. Nor do we know what other factors or circumstances may have influenced this course of action rather than the other. Also, as stated before, the construction which these parties gave to the instruments of May 9 and 10, 1934, does not control their legal effect. The acceptance of the gift tax by the Commissioner does not estop him from thereafter making a valid claim for estate taxes on another person's estate. Guaranty Trust Co. v. Commissioner, 2 Cir., 98 F.2d 62. See also: Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690; Higgins v. Commissioner, 1 Cir., 129 F.2d 237, 239.

■ We do not find any reversible error in the exclusion of testimony of Godfrey Hammel relating to the grantor's opinion of his rights in the trusts. Although the question, as revised, was properly worded, yet the answer seems to be in the form of a conclusion of the witness, and, if so, was properly excluded. If it was meant to be an exact statement of what the grantor had said, that fact should have been more clearly shown by additional questions. In any event, such testimony appears cumulative.

The ruling of the Tax Court is affirmed.

McALLISTER, Circuit Judge (dissenting).

With the able opinion of Judge Miller, I am unable to concur. In seeking to justify my view that the decision of the Tax Court should be reversed, I shall outline the circumstances of the case and the principles of law which I consider are decisive of the case.

On July 18, 1923, Theodore F. MacManus created several revocable trusts, one for each of his children. On December 30, 1924, by amendments, the grantor made each of the trusts irrevocable and surrendered the right to receive back all or any part of the trust property. He did, however, retain the right to change the beneficiaries of the trusts to the extent that he was empowered to designate as such beneficiaries "along with or in place of" the beneficiaries named therein, any persons bearing the relationships to the beneficiaries of spouse, child, brother, sister, or spouse or child of a brother or a sister. In the early 1930s, the grantor became dissatisfied with the corporate trustee named in the trusts, and after numerous conferences with his attorney and members of his family, he executed amendments to the trusts on May 10, 1934, changing the beneficiaries named therein to John R. MacManus, his son. This change was within the powers reserved by the grantor in the trust amendments which had been made on December 30, 1924. Concurrently with the amendments which made him the new beneficiary of the trusts, John R. MacManus issued a declaration of trust, dated May 9, 1934, in which he acknowledged that pursuant to a common understanding with all interested parties, he would hold all of the corpus and income of the trusts created by his father, as trustee for himself and the other children of the grantor, share and share alike. Subsequent to the death of Theodore F. Mac-

Manus on September 12, 1940, the Commissioner of Internal Revenue ruled that the assets held by John R. MacManus, trustee under the declaration of trust dated May 9, 1934, were properly to be included in the taxable estate of the deceased grantor for federal estate tax purposes. This holding was based on the ground that the deceased grantor, after the said declaration of trust of May 9, 1934, still retained the right to change the beneficiaries named in the trusts, and that the trust estate would therefore, remain taxable to the grantor. Du Charme's Estate v. Commissioner, 6 Cir., 164 F.2d 959. The Tax Court affirmed the action of the Commissioner. 8 T.C. 330. On appeal to this court, petitioning executors in the estate contend that Theodore F. MacManus, the deceased grantor, did not, after the declaration of trust of May 9, 1934, retain any right to change the beneficiaries named in the trusts; and that is the principal issue before us.

Up to the time of the transactions in May 1934, between the grantor, Theodore F. MacManus, the members of his family, the corporate trustee, and his son, John R. MacManus, there is no question that Theodore F. MacManus retained the right to change the beneficiaries named in the original trust instrument which was executed in 1923, and amended in 1924. It is, however, claimed by petitioners that this power of Theodore F. MacManus to change the beneficiaries was terminated by certain instruments dated May 10, 1934, which changed the beneficiaries and designated John R. MacManus as substituted beneficiary in the trusts, as well as by the declaration of trust made by John R. MacManus dated May 9, 1934, and also by the execution of the Release and Consent, discharging the corporate trustee and transferring the corpus of the estate to John R. MacManus. It is further submitted that the intent of Theodore F. MacManus so to terminate such power was evidenced not only by the language used in the above named instruments but also by other declarations, and documents and letters signed by him prior and subsequent to the execution of the aforesaid documents in 1934.

All of the above mentioned instruments effecting a change of beneficiaries to John, as well as the Release and Discharge of the corporate trustee and Consent to the transfer of the corpus of the trust estate to John, were executed by Theodore F. MacManus, who also directed the drafting and execution of the declaration of trust which was made by his son, John. The legal result was that Theodore F. MacManus was actually the grantor of John's declaration of trust. MacManus et al. v. Commissioner, 6 Cir., 131 F.2d 670; Buhl v. Kavanagh, 6 Cir., 118 F.2d 315.

In the accompanying opinion, it is held that this case is controlled by our prior decision in MacManus et al. v. Commissioner, supra, because of our construction of the trusts, and the conclusion of the court therein stated that the grantor's sole purpose in the new declaration of trust of 1934, was a change of trustee from the corporate trustee to his son, John. If a change of trustee were the grantor's *sole* purpose in the new declaration of trust and other transactions of 1934, then he did not have the purpose to, and did not surrender the right to designate beneficiaries which he had retained in the original trust instrument of 1923. But I do not believe that this case is controlled by our prior decision or that the change of trustee was the sole purpose of the grantor in the declaration of trust of 1934. On the contrary, I believe that the evidence clearly shows (as the Tax Court actually found) that the grantor's purpose was to provide that his children should have the trust property without any further strings attached by way of a reservation of right on his part to designate beneficiaries. I further am of the opinion that the original grantor actually surrendered, in 1934, all right to designate the beneficiaries of the trust. If this case is not controlled by our prior decision in MacManus v. Commissioner, 6 Cir., 131 F.2d 670, and if it appears that in 1934, it was not the grantor's sole purpose to secure a change of trustee because of dissatisfaction with the corporate trustee, it would seem a reasonable conclusion that the most substantial basis for the government's claim and the proposed decision in the instant case disappears. For it is the authority of the prior decision upon which the government rests its case, as well as

the authority upon which the Tax Court rendered its decision in the instant case (although, in my opinion, wholly irreconcilable with its findings of fact therein), and upon which the accompanying opinion is based.

To me, the most important consideration in the controversy before us is the following finding of the Tax Court in the instant case: "Prior to May 1934, the decedent (grantor) desired to terminate the trusts of July 18, 1923, *because (1) he was satisfied to have his children possess the property 'without further strings attached to it.'*" It is this finding, more than any factor, which leads me to dissent from the accompanying opinion, since that opinion is based upon the assumption that the grantor's *sole* purpose in the transactions of 1934 was "a change of trustee because of his dissatisfaction with the results obtained by the trust company." This assumption is not founded upon any evidence or findings of fact in this case, but comes from the language of this court as expressed in the prior MacManus case, in which an entirely different issue was presented and in which the evidence was in no wise similar to that introduced upon the hearing of the case now before us. It is because of the statement of this court in the prior case to the effect that the grantor's sole purpose was a change of trustee, that the accompanying opinion holds that that case is controlling in the present controversy.

It, therefore, becomes necessary to distinguish, if possible, the prior case from the instant case; to ascertain whether anything was decided in the prior case which is again before us in this controversy and whether the prior case controls us in this adjudication.

In MacManus v. Commissioner, 6 Cir., 131 F.2d 670, the court was concerned with a question of income tax liability arising out of the trusts and instruments which are before us in the present controversy. There, however, the question for decision was whether, after the consummation of the changes made in 1934, the fiduciary was accountable on the basis of one trust or four trusts. If there were but a single trust, a substantial additional tax would be payable; if there were four trusts, as was contended by the Estate, the additional tax would be only nominal. The determination of the question depended upon a construction of the declaration of trust made by John MacManus. Since the Board of Tax Appeals had found John's declaration of trust to be ambiguous in this regard, it had resorted to extrinsic aids to its interpretation in ascertaining what had been the intention of the grantor. In reviewing the decision of the Board, this court stated that the intention of the grantor was conceded to be controlling, and that, assuming ambiguity in the declaration of trust, we would consider a certain letter from the grantor to John as elucidating the grantor's intention. The court further went on to say that the letter in question indicated that the grantor's sole purpose was a change of trustee because of his dissatisfaction with the results obtained by the trust company; that he was advised that the simplest way of relieving the trust company was to change the beneficiary provisions from several of his children to his son, John, who would then act as trustee; and the court quoted what the grantor wrote to John as follows: "I want to impress upon you most earnestly, however, that the original spirit behind the creation of the trust is not changed. Our distinct and definite understanding is that the four trusts are to remain intact and that your own, Theodora's, Alice's and Teddy's positions will be exactly the same." The court then held that the intention of the grantor was to continue four trusts rather than to merge them into one.

From the foregoing, the Tax Court, in the instant case, concluded that "the controversy basic to the issue here has been decided by the Circuit Court of Appeals"; and in the accompanying opinion, it is held that the instant case is controlled by our prior decision.

The two cases are, however, entirely different. The issue before the court in the prior case was whether the intention of the grantor, Theodore F. MacManus, was to provide for four trusts or for one. The issue now before us is a totally different one, namely, whether Theodore, after John's declaration of trust, retained the power to change the beneficiaries. It is

true that petitioners here maintain that all trusts in existence prior to John's declaration were terminated thereby; and if that were so, of course, the retention of the power to change beneficiaries in the prior trusts was terminated. However, the determination that the prior trusts were not terminated would certainly not amount to a decision that the grantor had retained the power to name the beneficiaries of the trust. It was held by this court in the previous case that those trusts were not terminated but were continued as four trusts rather than as one. MacManus et al. v. Commissioner, 6 Cir., 131 F.2d 670, at page 674. But the decision that the original trusts were not terminated by John's declaration of trust was contrary only to one of petitioners' present contentions and is not fatal to their claims or of controlling importance in the determination of this case. It was only an alternative contention. For, here, decision must rest, not on whether the original trusts terminated, but on our determination of petitioners' general contention—that grantor did not retain the power to change the beneficiaries which he had reserved in the original trust agreement. As to such issue, our prior decision, above cited, is not pertinent.

The government, however, emphasizes that in our previous decision, this court referred to the above mentioned letter which the grantor wrote to John on April 20, 1934, before the latter's declaration of trust; stated that it indicated that the grantor's *sole* purpose was a change of trustee; that, in John's declaration of trust, there was "a clear recognition of the purpose of Theodore F. MacManus to continue the existing trusts with but one change, and that in the name of the trustee, and that the predominant thought throughout the instrument is that there are four trusts and not one." Of course, if the sole purpose of the grantor, as evidenced by John's declaration of trust, was a change of trustee, then he had no intent to surrender his right to change the beneficiaries of the trusts that he had reserved in the original trust agreement. But the court was confronted with only one question in the former case, which, as has been remarked, was whether, by John's declaration of trust, the prior trusts were terminated, resulting in one trust, or whether there was a continuation of the four original trusts. With respect to the single issue then before the court, the statement that the sole purpose in John's declaration of trust was to continue the original trusts with but one change—that of trustee—was entirely proper. Yet in the case now before us, with entirely different issues and contentions, it is not a contradiction of what was said in the prior case to say that one of the grantor's purposes, as evidenced by John's declaration, was to surrender and terminate his power to change the beneficiaries in the original trusts. The most important point in this case is that the Tax Court made a finding of fact that the grantor desired to terminate the trusts of 1923 because he was dissatisfied with the actions of the Detroit Trust Company, as trustee, and *because "he was satisfied to have his children possess the property 'without further strings attached to it.'"* In view of the foregoing, it cannot be said with respect to the issues before us and the findings of the Tax Court, that the purpose of the grantor, as evidenced by John's declaration of trust and the other instructions of 1934, was *solely* to change the trustee. The Tax Court expressly found to the contrary. The prior MacManus case, therefore, cannot be held to control decision in the case before us.

We come, then, to the question whether the original grantor surrendered his right to designate the beneficiaries of the trust which he had previously retained in the trust instrument of 1923. Petitioners contend that the language in the Release and Consent to Transfer dated May 11, 1934, executed by the grantor and the original trustee, providing for the discharge of the corporate trustee and the substitution of John R. MacManus in its place, showed the intent on the grantor's part to abandon his right to change the beneficiaries, and was, in fact, a surrender of such right on his part. The government contends that "The purpose of the provision was plainly to transfer all of the powers of the Detroit Trust Company as trustee to John as successor trustee and there is nothing to indicate an intention on the part of the father

to give up his powers to shift the shares of beneficial interest." The pertinent language of the Release and Consent in question is as follows: "Now, Therefore, in consideration of the premises, It Is Agreed, that the Detroit Trust Company, as Trustee, shall be and hereby is discharged and released from any and all obligation of every name and nature contingent or otherwise growing out of the aforesaid agreement of July 18, A.D. 1923, supplement thereto of December 30, 1924, and supplement thereto of the 10th day of May, A.D. 1934, and that all of the rights, powers, benefits and interests in and to said agreement and supplements, and in and to the Trust Estate covered thereby, shall be and hereby are transferred and assigned to John R. Mac-Manus, and in all respects, insofar as the Detroit Trust Company, as Trustee, is concerned, said agreements and/or supplements, and/or all right, title, interest, obligation, responsibility and liability with respect thereto and/or the corpus of the Trust Estate covered thereby, including all accumulations thereto, shall hereby cease and terminate."

The above Release and Consent to Transfer can be paraphrased as follows:

(1) It is agreed that the Detroit Trust Company, as Trustee, shall be and is hereby discharged and released from all obligations growing out of the original trust agreement of 1923, the amendment thereto of 1924, and the supplement of May 10, 1934.

(2) The parties executing the Release and Consent hereby transfer and assign to John R. MacManus all of the rights, powers, benefits, and interests which they may have in and to the trust agreement of 1923, the amendment of 1924, and the supplement of May 10, 1934, and in and to the trust estate covered thereby.

(3) The above agreements and supplements and all responsibility with regard to the trust estate shall cease and terminate in so far as the Detroit Trust Company is concerned.

Since, in paragraph (2) above, all of the rights, powers, benefits, and interests in and to the trust agreement of 1923, the amendment of 1924, and the supplement of May 10, 1934, and in and to the trust estate covered thereby, were transferred and assigned to John R. MacManus, it would appear that any rights which the grantor had in those instruments were assigned and transferred to John. The grantor had various rights in all of the above instruments which were concerned with the rights and powers which he had previously reserved therein. He assigned all of his rights to John. What, then, was assigned and transferred to John? In the trust agreement of 1923, only two parties had rights and powers therein—the grantor and the trustee. In the amendment of 1924, the only rights and powers mentioned therein were those of the grantor to appoint other or additional beneficiaries of the trust. In the supplement of May 10, 1934, the only power mentioned was likewise that of the reserved power of the grantor to appoint and designate beneficiaries. If all of the rights, powers, and interests of the grantor in the original trust instrument, the amendment thereto, and the supplement were, in the Release and Consent, transferred and assigned to John, the grantor would have remaining none of the rights, powers, and interests which had been reserved to him in those instruments. This was his purpose, according to the finding of fact of the Tax Court.

I am of the opinion that the grantor's transfer and assignment to John of all of his rights, powers, benefits, and interests in the original trust agreement, the amendment, and the supplement must be considered to include his right and power to designate additional beneficiaries of the trusts and to be a release and termination of any such rights and powers on his part to designate additional beneficiaries.

With regard to the declaration of trust of 1934, many provisions in it are clearly inconsistent with any retention of power on the part of the original grantor to change the beneficiaries of the trust. It is set forth in the declaration of trust: "I (John R. MacManus) further agree that if, as and when any dividends or profits are declared on any investments of such trust funds and paid to me, I may divide the same equally among the persons hereinbefore named, if at that time I deem such

division advisable or I may withhold the same and credit to account of beneficiaries if I deem it expedient for the benefit of such trusts." [131 F.2d 672.] In addition, the instrument, in another paragraph, gives John, as trustee, the right "from time to time with the consent of Alice Holdridge MacManus (wife of the grantor) to advance to *, * * beneficiaries a part of the corpus or income of said trusts, the making of the said advancement being however within my sole discretion." These rights on the part of John, as trustee, are entirely inconsistent with the retention of any power on the part of Theodore, the original grantor, to change beneficiaries in the trust, inasmuch as the payment of dividends and profits and the advancement of a part of the corpus or income of the trust to the beneficiaries would put the sums so paid forever out of the control of the decedent grantor. This declaration, so inconsistent with any reservation of such rights on the part of Theodore, was, although made by John, the same as Theodore's declaration, and equally binding on him. It is completely incongruous with any reservation of right to change beneficiaries.

To petitioners' arguments that the declaration of trust by John is inconsistent with any reservation of the power of the original grantor to change the beneficiaries, the government asserts that the provisions of John's declaration are ambiguous and should be read in the light of the letter of April 20, 1934, written by the grantor to John, as well as in the light of all of the attendant circumstances. This appears to be an irrelevant contention. The letter in question, in so far as here pertinent, stated, as has been mentioned, that the grantor and his advisors had agreed that the interests of John and his brother and sisters would be best served if John were substituted for the trust company as trustee; that there would then be a good chance to rehabilitate the trusts; that the simplest way of carrying out the transaction would be to change the beneficiary provisions from the various children to John alone; that the original spirit behind the creation of the trust was not changed but that the four trusts were to

remain intact and that the position of the children after the substitution of the trustee and the change of the beneficiary provisions would be exactly the same. Whatever ambiguity there may be in the foregoing was that which this court had occasion to pass upon in the prior MacManus case. But this ambiguity was solely with respect to whether the four trusts were to be continued or whether there was to be one trust. The court in the prior case was not concerned with any right of the grantor to change beneficiaries, and the letter in question had no bearing on this issue.

If, as the government contends, extrinsic aids should be used in ascertaining the intention of the grantor, petitioners insist that such aids strengthen their claim rather than that of respondent. In support of this claim, they refer to the fact that when John, as trustee, purchased certain annuity contracts based on the life of the grantor, and the latter was asked by the insurance companies for his consent thereto, he replied that he had no interest whatsoever in the trust, and that John R. MacManus was "in full control of the Trust Estate in which he is trustee and which is evidenced by a declaration of trust dated May 9, 1934." As also bearing upon the intention of the grantor, it appears that before he caused John's declaration of trust to be prepared and drafted, he discussed the whole matter with John and that after the execution of the latter's declaration of trust, he had a further talk with him about his powers under it. At that time, the grantor told John that, as trustee, he was free to act for his brother and sisters and that the responsibility was solely his own; that the four children were the sole beneficiaries; and that he, Theodore, had no right to change the beneficiaries. A few years before the execution of John's declaration of trust, and on the occasion of the marriage of one of the grantor's daughters, there was a considerable discussion between the grantor and his financial advisors about turning over to the daughter, the entire trust standing in her name; but this was not done because the accountant advised against it. Prior to the execution of John's declaration of trust and during the discussions about the right to change

beneficiaries, the grantor told Godfrey Hammel, his accountant and business counsellor, that he was satisfied with his children and that he was willing to turn over the assets in the trusts to them without holding on to his right to change beneficiaries. This certainly was in accord with the Tax Court's finding of fact to the effect "that prior to May, 1934 the decedent desired to terminate the trusts of July 18, 1923, because (1) he was satisfied to have his children possess the property 'without having further strings attached to it,'" and gives the ring of truth to petitioners' contentions.

Another circumstance of importance may be mentioned. On December 29, 1937, Theodora Toluboff, one of the grantor's daughters, named in the trusts as a beneficiary, made an assignment and transfer of all of her interest in the corpus and income of the trust estate to her sister and brothers. Theodora's husband was a man of considerable means, associated with the motion picture industry, and wished to make all provision for her to the exclusion of any assistance or provision by her father. To carry out her desires, the grantor had a number of conferences with his lawyer and financial advisor and accountant, and it was decided that the transaction should be carried out in the form of a direct assignment by his daughter, Theodora, of her one-quarter interest in the trust to the other children of the grantor. The grantor participated in the discussions with respect to this method of carrying out her wishes and agreed with the conclusion that a direct assignment should be made by her. The grantor, his financial advisor, and his attorney considered at the time that Theodora was the absolute owner of a one-quarter interest in the trust. The grantor's accountant participated in the preparation and drafting of the assignment by Theodora, which she afterward executed on December 29, 1937. Subsequently, on or before March 15, 1938, Theodora MacManus Toluboff filed a gift tax return and paid a gift tax to the Treasurer of the United States in the amount of $1,970.59 on the transfer of her interest in the trust. No claim for refund was ever filed and no refund, ever made. Petitioners submit that no such gift tax return would ever have been filed and no gift tax paid unless the grantor, his attorney, and his accountant had considered that Theodora was the outright owner of the one-fourth interest in the trust; and petitioners submit that if it had not been the intention of the grantor, in the transactions of 1934, to surrender all right to name additional beneficiaries, he himself could have transferred the beneficial interest of Theodora in the trust to the other children, merely by a statement to that effect, without the necessity of the payment by Theodora of a gift tax of approximately $2,000 on the transfer; and the argument is certainly persuasive, that the grantor himself considered all rights to change beneficiaries terminated. There is no reason to doubt the testimony of the witnesses for the MacManus Estate; and the contentions of petitioners, and their conclusions drawn from the evidence, are sustained by the Tax Court's findings of fact already mentioned.

It is my conclusion that by his execution of the Release and Consent, Theodore F. MacManus, the grantor, transferred to his son, John, all of his rights and powers in the trust estate. Moreover, the provisions of John's declaration of trust—drafted by the grantor and binding upon him to the same degree as though he himself had executed the declaration—are contradictory of any reservation of power on the part of the original grantor to change or designate new beneficiaries of the trusts, and are inconsistent with any intent on the part of the grantor to retain such a power. Considering the Release and Consent together with the declaration of trust by John, which, in law, is the same as the declaration of the grantor, it clearly follows that these transactions amounted to a termination of the grantor's prior right to change the beneficiaries of the trusts. This is what the Tax Court actually found was the purpose of the original grantor.

Were it necessary to sustain my conclusions in so construing the instruments above mentioned by extrinsic aids to ascertain whether the grantor intended to terminate his power to change beneficiaries of the trusts, I would find most persuasive the statements made by the grantor to the

insurance companies that he had no interest in the trusts and that John was in full control thereof, as well as the grantor's discussions with his accountant, his lawyer, and his son, John, before and subsequent to the drafting of John's declaration of trust which was prepared at the behest of the grantor. Furthermore, the filing of the gift tax return and payment of a gift tax by the grantor's daughter, Theodora, when she transferred her interest in the trusts to her sister and brothers, all of which resulted from her consultation with the grantor, and because of his view that Theodora was the absolute owner of the interest in the trust, is certainly a cogent reason for concluding that the grantor did not intend to retain any power to designate the beneficiaries or to change the share of one to another. Consonant with such a conclusion is the finding of the Tax Court in this case that before the execution of John's declaration of trust, the grantor desired to terminate the original trusts because he was satisfied to have his children possess the property without any further strings attached to it. This finding tends in every way to support the testimony and claims of petitioners.

On another aspect of the case, the government contends that the entire trust arrangement on the part of the grantor was a transfer in contemplation of death. The Tax Court made no findings that the transfer was made in contemplation of death; but it did find that the grantor was in good health from April, 1934, when he first wrote John about the suggested change of trustee, until a few days before his death on September 12, 1940; that he had his own physical culture director; that he took regular gymnastic exercises while at his home and at his office; and that on May 10, 1934, the date of John's declaration of trust, "his health was excellent." The Tax Court further found that the grantor conducted an advertising agency; that his company was organized to handle several large advertising accounts, including General Motors and Champion Spark Plug Company; that in 1938, he organized a fund-raising drive for one of the great universities of the country; that in 1940, he undertook an advertising campaign for

the Willys Overland Company, and that shortly before his death, he had made several presentations of proposed sales programs to the sales and dealer departments of that company. He left for Georgian Bay for a vacation immediately after this work with the Willys Overland staffs and died unexpectedly and suddenly six days later. There is nothing in the record that would justify a finding that the grantor's trust arrangements were made in contemplation of death, and, as heretofore remarked, no such finding was made by the Tax Court.

It is also argued by the government that the grantor retained the enjoyment of the trust properties until he died. This contention is based upon the claim that the evidence shows that the grantor dominated his son, John, with respect to the handling of the trust property after the latter's declaration of trust and that the assets of the trusts were really always under the grantor's control. The evidence justifies no finding to this effect, and the Tax Court made no such finding.

But it is urged by the government that since the question whether the trust arrangement was a transfer in contemplation of death is "basically one of fact which should first be determined by the Tax Court * * *, it would be appropriate to remand the case to the Tax Court for consideration and determination" of this issue; and the same argument is made with respect to the contention that the grantor retained the enjoyment of the trust properties until he died. The fact that these questions were presented before the Tax Court and were not decided, does not, in my opinion, call for remand of the case.

Under the rule announced in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, it might have been necessary to remand this case, since it was there held that if a decision of the Tax Court has warrant in the record and a reasonable basis in law, the judicial function is exhausted when there is found to be a rational basis for the Tax Court's conclusion, and that when the appellate court cannot separate the elements of a decision of the Tax Court so as to identify a clear-cut mistake of law, the decision must stand. This,

of course, resulted in a greater limitation on the jurisdiction of courts of appeals to review decisions of the Tax Court than to review the judgments of district courts; and it might well have been that on a reversal of this case, it would have been necessary, because of the broad powers heretofore confided to the Tax Court, to remand the case to allow it to ascertain whether there was "warrant in the record" for holding that the trust was made in contemplation of death, and for further findings. But Congress has changed the Dobson rule, by the Act of June 25, 1948, effective September 1, 1948, providing that the federal courts of appeals "shall have exclusive jurisdiction to review the decisions of the Tax Court * * * in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury * * *." Title 26 U.S.C.A. § 1141(a), as amended by Section 36, Public Law 773, 80th Cong., Chapter 646, 2d Sess. According to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., it is provided that in all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and that findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

In the review of the decision of a district court, where the evidentiary facts are not in conflict or dispute, the conclusions to be drawn therefrom are for the appellate court upon review of the trial court's action. The rule that findings of fact shall not be set aside unless clearly erroneous, "rests in large part upon the fact that the trial judge who hears the witnesses testify and observes their demeanor upon the stand is better qualified to appraise the credibility of their testimony and to resolve the conflicts therein. So long, therefore, as a finding of fact is supported by evidence and is not clearly erroneous, it is to be accepted on appeal as verity. The rule does not operate, however, to entrench with like finality the inferences or conclusions drawn by the trial court from its fact findings. And so, while accepting the facts competently found by the trial court as correct, an appellate court remains free to draw the ultimate inferences and conclusions which, in its opinion, the findings reasonably induce." Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704, 705; Stubbs v. Fulton National Bank of Atlanta, 5 Cir., 146 F.2d 558; Murray v. Noblesville Milling Co., 7 Cir., 131 F.2d 470; United States v. South Georgia R. Co., 5 Cir., 107 F.2d 3; United States v. Mitchell, 8 Cir., 104 F.2d 343. See also Edward G. Budd Mfg. Co. v. C. R. Wilson Body Co., 6 Cir., 21 F.2d 803. In a case where the district court fails to make findings as to certain matters, but under the uncontradicted evidence could have made only one finding, the action will not be remanded for further findings. Levin v. Coe, 76 U.S.App.D.C. 347, 132 F.2d 589. In Harris Stanley Coal & Land Co. v. Chesapeake & O. R. Co., 6 Cir., 154 F.2d 450, this court has held that where the record does not present any conflict as to evidentiary facts or as to the credibility of witnesses, the appellate court is free to draw the ultimate inferences and conclusions, and is not bound by the findings of the trial court. In this case, there were no findings on the issue whether the trust arrangement was made in contemplation of death, and whether the grantor retained the enjoyment of the trust properties until he died. The facts in the case are undisputed. A search of the record discloses nothing that would justify findings that the trust arrangement was made in contemplation of death or that the grantor retained the enjoyment of the trust properties until he died. Under these circumstances, it would be unnecessary to remand the case for findings on these issues.

In accordance with the foregoing, it is my opinion that the decision of the Tax Court should be reversed.