Estate of Alex Pielet, Deceased, Bessie Barad and Herman Wolf, Joint Adminstrators De Bonis Non with the Will Annexed v. Commissioner.
Estate of Pielet v. Commissioner
Docket No. 90697.
United States Tax Court
T.C. Memo 1963-169; 1963 Tax Ct. Memo LEXIS 174; 22 T.C.M. (CCH) 808; T.C.M. (RIA) 63169; June 19, 1963
Andrew W. Gatenbey and Burton Berger, for the petitioners. Seymour I. Sherman, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in petitioner's estate tax in the amount of $422,061.60. The issue is whether the value of 58 certificates of beneficial interest in a trust, held of record by decedent's children, is includable in decedent's estate. Findings of Fact Some of the facts are stipulated and they are found accordingly. Alex Pielet, hereinafter called "Decedent," died a resident of the State of Illinois on September 11, 1956, at which time he was 80 years of age. An original estate *175 tax return and an amended estate tax return for the estate of the decedent were filed on December 11, 1957 and May 13, 1959, respectively, with the district director of internal revenue at Chicago, Illinois. David Pielet and Robert A. Pielet, decedent's sons, were appointed as co-executors of the estate of decedent, and as such co-executors filed the petition herein. Bessie Barad was decedent's daughter and Samuel Pielet was his grandson. By order entered August 22, 1962, Bessie Barad and Herman Wolf were appointed by the Probate Court of Cook County as joint administrators de bonis non with the will annexed. Said Bessie Barad and Herman Wolf are still acting in such capacity. By order entered December 5, 1962, this Court substituted Bessie Barad and Herman Wolf as petitioners in place of David Pielet and Robert A. Pielet, and changed the caption of this case to that which it now bears. On or about December 31, 1948, an instrument was executed by Alex Pielet purporting to create a trust known as The Alex Pielet Trust No. 1, hereinafter called the "Trust." This trust instrument provides that Alex Pielet will deed some 16 parcels of realty to Alex Pielet, trustee, to be held for *176 the uses and purposes set forth in the trust instrument. It provides that the trustee shall issue certificates of 100 units to Alex Pielet "which certificate or certificates shall be the consideration for the conveyance to the Trustee of the real estate." The trust instrument provided the certificates of beneficial interest should contain the following: THE ALEX PIELET TRUST NO. 1 Certificate of Interest Certificate No…. Units This certifies that ALEX PIELET is the owner of… units in The Alex Pielet Trust No. 1 out of a total of one hundred (100) units in said Trust and representing a proportionate interest in the net income, proceeds and avails of the said Trust as defined in the agreement hereinafter referred to. This certificate and interest represented thereby are subject to all the terms and conditions contained in that certain trust agreement dated the 31st day of December, 1948, known as THE ALEX PIELET TRUST NO. 1, under the provisions whereof this certificate is issued, to the same extent and in the same manner and with the same force and effect as if said trust agreement were fully set forth herein; and by the acceptance of this certificate the holder hereof *177 consents and agrees to be bound by all of the terms, provisions and conditions contained in said trust agreement. It is expressly agreed that the holder hereof has no claim or interest, legal or equitable, in any of the property covered by or referred to in said trust agreement, but only an interest in the net income, proceeds and avails thereof. This certificate is transferable only on the books of the Trustee by the holder hereof in person or by attorney upon surrender of this certificate properly endorsed. Dated /s/ Alex Pielet as Trustee under Trust known as THE ALEX PIELET TRUST NO. 1 and not personally. The trust instrument goes on to enumerate the powers of the trustee as including the right to borrow money for the purposes of the trust in such amounts as he may deem proper, and pledge the trust assets for such loans. The instrument provides that the trustee "shall hold all of the Trust Property in trust, to sell and convert the same into cash or other personal property, and to distribute the net proceeds thereof to the beneficiaries hereunder, and in the meantime, for the purpose of the ready sale and conversion of the property and with that end always in view, to *178 manage, operate, improve, protect and maintain the same." The trust instrument goes on to list in minute detail all of the powers that the trustee shall have over the real property of the trust and concludes with saying: without in any manner limiting any of the foregoing, to deal with the Trust Property and any part thereof in all other ways, and for such other considerations, as would be lawful for any person owning the same to deal with the same, whether similar to or different from the ways above specified, at any time or times hereafter; provided, however, that the Trustee shall not, prior to the termination of this trust, sell or otherwise dispose of the whole or the bulk of the Trust Property unless not less than twenty (20) days prior to such sale or other disposition, the Trustee shall mail to the Certificate Holders, in the manner herein provided, a notice briefly specifying the property to be sold or disposed of and the terms and conditions of such proposed sale or other disposition, and no such sale or other disposition shall be made if, within twenty (20) days from the date of mailing such notice, the holder or holders of thirty-three and one-third (33 1/3%) per cent *179 or more of the units outstanding represented by certificates of interest then outstanding of record, shall lodge with the Trustee written objection to such proposed sale or other disposition. The foregoing limitation on sale or other disposition of Trust Property shall not be construed to apply to the mortgaging or pledging thereof by the Trustee, or to the leasing thereof for any term not exceeding five years. * * *
The provision for distribution of the trust income and assets is as follows: Whenever there shall be in the hands of the Trustee assets not required for any other purposes under this trust, which, in the sole discretion of the Trustee shall be deemed sufficient to distribute, the Trustee may make provision thereof among the Certificate Holders; all net income in the hands of the Trustee and all distributions of net proceeds and avails of this trust shall be paid and distributed to the owners of the certificates of interest issued hereunder, in such proportion as the number of units held by each such owner shall bear to the total number of units then outstanding, but no assignee or transferee in interest hereunder shall be entitled to participate in any of the *180 moneys coming into the hands of the Trustee until a certificate of interest shall be issued to such assignee or transferee in accordance with the provisions hereof, and his, her or its ownership registered on the books of the Trustee. The instrument provides that the trust may be terminated by written direction lodged with the trustee "of the holder or holders of seventy-five per cent of the units of beneficial interest then outstanding; but if not sooner terminated then this Trust in any event shall terminate within five (5) years from and after the date of the death of Alex Pielet." Provision is made for the sale of assets upon termination at public or private sale and division of the proceeds pro rata amongst the holders of the certificates. Provision is also made for the appointment of David Pielet as trustee in the event of "the death, refusal, inability or failure to act or resignation of" Alex Pielet, trustee. All 100 certificates of beneficial interest (hereinafter called "certificates") in the trust were initially issued to decedent. Thereafter, from time to time, and beginning on or about December 31, 1948, decedent caused various amounts of certificates to be transferred *181 of record to his children, Robert A. Pielet, David Pielet and Bessie Pielet Barad, and to his grandson, Samuel Pielet. About three days after decedent executed the above instrument the above named children and grandson of decedent, who were then the record holders of certificates, executed an agreement which recites, in part, that: WHEREAS, said ALEX PIELET has made gifts of certificates of beneficial interest in said real estate to the parties hereto and has paid obligations owing by him to certain of the parties hereto by the execution and delivery to said parties of certificates of beneficial interest, and WHEREAS, * * * NOW THIS AGREEMENT IS MADE: * * * The agreement is that the parties will not sell, assign, transfer, convey, pledge, or encumber their certificates for a period of five years and thereafter for a period of an additional five years they will only sell to a member of the family. On April 1, 1952 an instrument entitled "AMENDMENT TO THE ALEX PIELET TRUST NO. 1" was executed which added the following to the trustees' powers and was signed and executed, as follows: provided, however, that the Trustee, on his own initiative and without any such direction, *182 may from time to time make loans to any one or more of the beneficiaries of this trust (and borrow money to obtain funds for this purpose) and/or may guarantee loans made by others to any one or more of the beneficiaries, making the liability incurred in any such borrowing or guarantee a direct charge against the trust estate and, in the Trustee's discretion, securing the same by mortgage, pledge or other encumbrance upon the trust estate; and IN WITNESS WHEREOF, I have hereunto set my hand and seal this 1st day of April, A.D. 1952. /s/ ALEX PIELET (SEAL) TO: Alex Pielet, Trustee under trust agreement dated December 31, 1948, known as "The Alex Pielet Trust No. 1" WE, the undersigned being all the beneficiaries under said trust, do hereby consent to the amendment to the Trust Agreement as above set forth. /s/ DAVE PIELET /s/ ROBERT A. PIELET /s/ BESSIE PIELET BARAD /s/ SAMUEL PIELET On the date the trust instrument was executed decedent also executed transfers of certificates to his children and grandson. He executed a transfer of 13 interests to David Pielet, 9 interests to Robert Pielet, and 10 interests to Bessie Pielet Barad. The transfers were accomplished *183 by Alex Pielet cancelling some of his certificates (for 100 interests) and issuing new certificates to his children. On the date of decedent's death the certificates of the Trust were held of record, as follows: No. of
Holder
Certificates
Alex Pielet (decedent)
42
David Pielet
23
Robert A. Pielet
19
Bessie Pielet Barad
14
Samuel Pielet
2
Total
100
At all times here material no person other than the foregoing ever owned any of the certificates of the trust. Decedent was the trustee of the trust from its inception until his death. At all times material the principal assets of the trust consisted of parcels of real property transferred by decedent to himself as trustee. The 58 certificates owned of record by the children and grandson of the decedent at the time of his death had been transferred of record to them by the decedent on various dates. Seven of such certificates had been so transferred within three years prior to decedent's death. For the years 1949 and 1950 the trust did not file income tax returns. All income from the properties of the trust was reported for 1949 and 1950 in the individual income tax returns of decedent. For 1951 and *184 subsequent years the trust filed income tax returns showing the income from the trust properties and reflecting distributions thereof to the owners of record of its certificates. This latter treatnent was challenged by the Commissioner, and the matter was ultimately disposed of by mutual agreement. After December 31, 1948, the ledger account entitled "Estate of Alex Pielet" was continued in use, and continued to reflect the income and expenses of the trust properties. Until some time in 1951 receipts from the trust properties continued to be deposited in decedent's personal bank account. It is stipulated for the purpose of this case that the fair market value of the certificates of the trust, as of the date of decedent's death, shall be deemed to be in the amount of $11,830.08 per certificate. Opinion The only issue here is whether the gross estate of decedent includes the value of the 58 certificates standing in the names of decedent's three children and his grandson. It is admitted the value of the 42 certificates standing in decedent's name is includable in decedent's gross estate for estate tax purposes. Section 2038(a)(1), Internal Revenue Code *185 of 1954, provides the gross estate of a decedent shall include the value of all property "of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person * * * to alter, amend, revoke, or terminate, * * *." The trust instrument provided: "This trust may be terminated by written direction lodged with the Trustee of the holder or holders of seventy-five per cent of the units of beneficial interest then outstanding; * * *." The respondent's determination must be sustained under section 2038(a)(1), supra, because of the presence of the above clause in the trust instrument. At the time of his death decedent had the power to act in conjunction with others (holders of 33 additional certificates), to terminate the trust. See Lober v. United States, 346 U.S. 335, Estate of Carrie Grossman, 27 T.C. 707. Apart from the power to *186 terminate, so specifically spelled out, the settlor, by the trust instrument, retained such broad powers and control over the trust property as to be fatal to petitioner's position. We need only point to the provisions that gave the trustee "full power" as trustee "to sell and convert the same [trust property] into cash * * * and to distribute the net proceeds thereof to the beneficiaries hereunder" and the provision that gives the trustee "sole discretion" with respect to distribution. Estate of Albert E. Nettleton, 4 T.C. 987; Estate of Carrie Grossman, supra. Petitioner argues that 23 of the certificates were transferred for adequate and full consideration. The burden to establish transfers for adequate and full consideration was upon petitioner. The only evidence is the testimony of decedent's attorney who drafted the trust instrument and the daughter of decedent. The attorney said when he drafted the transfers of December 31, 1948, decedent stated 23 of the 32 units transferred to his children that day were in payment of debts he owed them and that he was giving each of his three children 3 additional units. The daughter testified she was present *187 when her father executed the December 31, 1948 transfers and in answer to a leading question: "Did he transfer certain shares to you, Dave and Robert in return for * * * money he owed to you three?", she replied, "That is right." Such testimony is wholly inadequate to establish that 23 certificates were transferred to the children for adequate and full consideration in money or money's worth. Decedent's sons did not testify at all and if full value would be given to the daughter's testimony it would only amount to a statement that in 1948 "certain shares" of unstated value and in some unspecified number were transferred to her and her two brothers for some unspecified amount of money their father owed to them. Respondent argues there was actually no delivery of the certificates to decedent's children or grandson for after their execution by decedent they were left in the office of decedent's attorney. The attorney testified he also represented the transferees. Without reviewing the evidence on the issue, we think it sufficient to establish the transfers of the certificates by the decedent to his children and grandson. However, for reasons stated earlier, we hold the value of the *188 58 certificates transferred to decedent's children and grandson are includable in his estate for estate tax purposes. Decision will be entered under Rule 50.