## DU CHARME'S ESTATE v. COMMIS-SIONER OF INTERNAL REVENUE.

### No. 10452.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1947.

Laurence A. Masselink, of Detroit, Mich. (U. George Krapfel and Laurence A. Masselink, both of Detroit, Mich., on the brief), for petitioner.

Carlton Fox, of Washington, D. C., (Theron Lamar Caudle, Helen R. Carloss and Carlton Fox, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioner, as Executor of the Estate of Charles B. DuCharme, seeks a review of a decision of The Tax Court of December 30, 1946, adjudging a deficiency in estate tax in the amount of $50,140.58. The alleged deficiency arose out of two trust estates, hereinafter referred to as Trust No. 1 and Trust No. 2, in one of which it is claimed that the decedent as Settlor reserved certain powers to change the enjoyment of the trust property and to change the terms of the trust instrument, and in the other of which the decedent was the donee of a general power of appointment exercised by him by will. The findings of fact, which were for the most part stipulated and are not in dispute, together with the Tax Court's opinion are reported in 7 T.C. 705.

### Trust No. 1.

On June 19, 1928, decedent created a trust for the benefit of his wife and three children, naming the Detroit Trust Co. as Depository-Trustee and naming himself as Co-Trustee. The trust instrument provided in part as follows:

"2. The Co-Trustee shall have the sole right at his discretion to exercise on behalf of the Trustees the following powers:

"(a) To sell any part of the trust estate and direct the reinvestment or distribution of the proceeds thereof or of any income, subject, however, to the provisions of Paragraph 5.

\* \* \* \* \* \*

"3. \* \* \* The Depositary Trustee shall be bound by any act or direction of the Co-Trustee within the above specified powers, \* \* \*.

"4. \* \* \* The judgment of the Co-Trustee in directing the withholding or distribution of income and/or principal or in directing investments in stock or speculative securities shall not be questioned, but as to withholding or distribution of income and/or principal shall at all times, however, be subject to the provisions of paragraph 5, \* \* \*.

"5. \* \* \* No power rests with the Trustees, or either of them while this trust continues, to distribute or direct the distribution of the income or principal to any

person other than the wife or legal children of the Settlor, as now or hereafter existing."

Paragraph 6 provided that the trust was for the sole benefit of the decedent's wife as long as she lived and remained his wife, or as long as she remained unmarried after his death, and for the benefit of his legal children or their issue, and that the trust should be irrevocable. It also provided for the distribution of the corpus of the trust estate and all accumulated income to his children upon his wife's death or remarriage if he pre-deceased her and upon the wife's death or ceasing to be the Settlor's wife during the life of the Settlor. Section 8 provided as follows: "8. While the Settlor lives and the Co-Trustee remains mentally competent, the Co-Trustee may direct portions of the principal to be paid or transferred to the Settlor's wife, Isabel, during her lifetime, but to no other person, as long as she remains the wife of the Settlor. * * *"

Paragraph 8 also provided that the income should be distributed to the Settlor's wife except as she might from time to time direct the accumulation thereof, which should then become a part of the principal of the trust estate; that after the Settlor's death the Depositary Trustee should pay such portions of the income and principal to the Settlor's wife as she might request as long as she remained unmarried, provided the requested portions of the principal were to be used for her personal needs, comforts, welfare or happiness, or the needs, education, or mental or physical care or development of his children, or any of them. Paragraph 12 of the trust provided as follows: "12. The provisions of this trust may be changed or amended during the lifetime of the Settlor upon the written request of the Settlor's wife, Isabel Bradbeer DuCharme, and with the written approval of the Settlor, but same shall not be amended or changed after the death of the Settlor. Upon any such request and approval the trust shall be amended accordingly."

The Settlor died on October 12, 1940 survived by his wife, his three children, his mother, Caroline, and his brother, Harold. As of the optional valuation date, the value of the corpus of the trust was $80,138.28, no part of which was included in the estate tax return. All of this amount was added by the Commissioner in making the deficiency assessment for the assigned reason that because the decedent reserved the power to alter, amend, or revoke the trust, the corpus of the trust was subject to inclusion in the gross estate under the provisions of § 811(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(d). The Tax Court sustained the Commissioner's determination.

Section 811(c) of the Internal Revenue Code includes in the gross estate of a decedent the value of property—"To the extent of any interest therein * * * of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life * * * (1) * * * or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; * * *." Section 811(d) of the Internal Revenue Code dealing with revocable transfers of property includes by subsection (2) thereof the value of property "To the exent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *." We are of the opinion that the trust in question was a transfer of property within the provisions of these sections.

Section 8 of the trust instrument expressly authorized the decedent as Co-Trustee to direct that portions of the principal be paid to the Settlor's wife during her lifetime. This made it possible for the decedent acting as Co-Trustee to diminish or extinguish the remainder interest of his children, and so change the enjoyment of the trust property. The case falls well within the ruling of the Supreme Court in Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 260, 90 L.Ed. 228. In that case the decedent transferred property upon trust for the benefit of his three sons, naming himself as trustee. Each

trust was to continue for 15 years, or on certain conditions longer. The trustee was authorized in his discretion either to distribute or to accumulate the income, and to apply each beneficiary's share of the corpus to the welfare and happiness of such beneficiary. The decedent reserved to himself the power to terminate any or all of the trust, and to distribute the principal and accumulated income to the beneficiaries then entitled to receive it. The Court held that the value of the trust property was includable in the decedent's gross estate, as an interest whereof the "enjoyment" was subject, at the date of his death, to change through exercise of a power to "alter, amend, or revoke," under § 811(d) (2) of the Internal Revenue Code. The Court rejected the taxpayer's contention that the only power reserved was a power to accelerate in time the enjoyment of the beneficial interest brought into being by the trust, which interests were vested interests, and that such a power did not change the enjoyment of the trust property. The Court said—

"More than once recently we have emphasized that 'enjoyment' or 'enjoy,' as used in these similar statutes, are not terms of art, but connote substantial present economic benefit rather than technical vesting of title or estates. * * * In this sense it is clear that none of the sons here had a present right to immediate enjoyment of either income or principal * * *, although each may have been invested with what respondent regards as a 'fee simple' in an equitable interest, subject to divestment by the contingency of the beneficiary's death during continuance of the trust. * * *

" * * * A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811(d) (2) requires in order to avoid the tax."

■ It is true, as petitioner contends, that the decedent's wife had the right under Paragraph 8, after the death of the decedent, to direct that portions of the income and principal be paid to her, which could result in completely extinguishing the remainder interest of the children in

the same way as could be done by the decedent. But this right in the widow was not as broad as the right in the decedent. It could not be exercised until after the decedent's death, and might never materialize. The exercise of the right by the decedent during his lifetime would accelerate the enjoyment of the corpus of the estate by the wife. Also, its exercise was restricted to certain purposes. In any event, the fact that the widow had a similar right to change the enjoyment of the trust property, does not destroy the right reserved by the decedent. The statute does not require the reserved right to be an exclusive right.

■ The provisions of Paragraph 12 of the trust instrument also bring the trust property within the statutory provisions. That paragraph expressly provides that the trust may be changed or amended upon the written request of the settlor's wife and with his written approval. It is not necessary in order to come within the statute that the other person who acts in conjunction with the settlor be a person other than a beneficiary; the statute says "any person." Helvering v. City Bank Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62; Commissioner v. Stevens, 3 Cir., 79 F.2d 490; reversed 297 U.S. 693, 56 S.Ct. 443, 80 L.Ed. 985. Petitioner contends, however, that Paragraph 12 did not give the decedent the right, in conjunction with another person, to designate the persons who shall enjoy the property, but that it merely gave the decedent the power to veto a change requested by the wife. The contention is supported by a strict construction of the phraseology of Paragraph 12, but in our opinion places emphasis upon form rather than upon substance. Regardless of who initiates or requests such a change, the consent of both parties is required to make the change effective. As a practical matter, if the settlor desired to make a change and the other party was willing that the change be made, the change could be accomplished under the provisions of Paragraph 12 by having the wife request the change agreed upon, even though it was originally suggested by the settlor. The rulings in Tait v. Safe Deposit & Trust Co., 4 Cir., 74 F.2d 851, 858; Day v. Commissioner, 3

Cir., 92 F.2d 179, 180, and Commissioner v. Flanders, 2 Cir., 111 F.2d 117, 120, cited to us by petitioner, are not applicable in that each case involved a contingent power to alter the trust which did not materialize into an actual power. The ruling in Orrin G. Wood, 40 BTA 905, also cited by the petitioner, is likewise not applicable. That case involved the question of whether the release of a power to veto was or was not a gift under the Gift Tax Statute. The Tax Court ruled that the reserved power to veto any change made by the trustees in the beneficial interest of the trust was not the equivalent of a power in the petitioner himself to change or alter the trust. A different question was presented under a different statute.

 Petitioner contends that the reserved power was exercisable by the decedent in his capacity as trustee rather than by the decedent individually, and that the statute is restricted to such powers reserved by the settlor individually. This same question was referred to in Commissioner v. Estate of Holmes, supra, but not there decided. The contention has, however, been rejected by several of the Circuit Courts of Appeals. Welch v. Terhune, 1 Cir., 126 F.2d 695, certiorari denied 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519; Union Trust Co. of Pittsburgh v. Driscoll, 3 Cir., 138 F.2d 153, certiorari denied 321 U.S. 764, 64 S.Ct. 521, 88 L.Ed. 1061; Commissioner v. Newbold's Estate, 2 Cir., 158 F.2d 694; Hurd v. Commissioner, 1 Cir., 160 F.2d 610; Jennings v. Smith, 2 Cir., 161 F.2d 74. We agree with the rulings in those cases.

 Petitioner contends that even if the trust property is properly included in decedent's estate, in any event the wife's life estate should be excluded therefrom. The Tax Court declined to do so because it appeared impossible for it to evaluate the life estate with the accompanying possibility of being divested upon the widow's remarriage. We are of the opinion that if the interest to be excluded can be properly evaluated, even though not with a high degree of accuracy, such an evaluation should be made. Estate of Albert E. Nettleton, 4 T.C. 987, 993; Central National Bank of Cleveland v. United States, 41 F.Supp 239,

247, 248, 94 Ct.Cl. 527; Paul, Federal Estate & Gift Taxation, Sect. 7.25, Vol. 1 and 1946 Supplement; Commissioner v. State Street Trust Co., 1 Cir., 128 F.2d 618, 622, 142 A.L.R. 943; Commissioner v. Maresi, 2 Cir., 156 F.2d 929, 931; Helvering v. Safe Deposit Trust Co., 316 U.S. 56, at page 67, 62 S.Ct. 925, at page 930, 86 L.Ed. 1266, 139 A.L.R. 1513. As was said in the Maresi case [156 F.2d 931]—"The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow." In that case the Court ruled that actuarial tables prepared by the Casualty Actuarial Society of America and supported by the testimony of an actuary of standing, which dealt with the probabilities of a widow's remarriage was competent evidence in evaluating a right depending upon such a contingency. The existence of such tables was not known to petitioner's counsel when this case was heard, but the availability of such tables was presented to the Tax Court by a petition for rehearing. We are of the opinion that under the rule in Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, which was cited with approval and applied by this Court in Durkee v. Commissioner, 162 F.2d 184, the Tax Court should have given further opportunity to the petitioner to show the value of this intervening interest, and that a further hearing should now be held for that purpose.

### Trust No. 2.

On July 17, 1928, decedent's mother, Caroline B. DuCharme, created a trust for the benefit of decedent and his brother, Harold DuCharme, wherein the Union Trust Company was named as trustee and Caroline B. DuCharme, Charles B. DuCharme and Harold DuCharme were named as Co-Trustees. It provided that the trust was created for the sole and equal use and benefit of the settlor's two sons, Charles B. DuCharme and Harold DuCharme, and that during the life of the trust the income should be paid share and share alike to the two sons, but that if one of them died during the lifetime of the settlor the entire income should be paid to the survivor, and that in the event both of them died during the lifetime of the settlor the entire in-

come, until the termination of the trust, should be paid to the settlor. The trust was irrevocable and was to terminate upon the death of the settlor. Paragraph 8 of the trust provided as follows: "On the death of the Settlor this trust shall terminate and all of the moneys, properties and securities then constituting the trust estate shall be transferred and paid over forthwith, free from the trust, share and share alike to the Settlor's said sons, Charles B. DuCharme and Harold DuCharme, or to the nominees or appointees by their Last Wills and Testaments, the right and power to dispose of their respective shares in the Trust Estate by their Last Wills and Testaments being hereby vested in and conferred upon the Settlor's said sons; * * *"

Decedent by his Will dated June 8, 1937 left his residuary estate in trust for the benefit of his wife and children. This residuary provision included "specifically one-half of the trust property included in a certain Voluntary Trust created by my mother, Caroline B. DuCharme, under agreement with Union Trust Company dated July 17, 1928, in which I am vested with the power of appointment and which power I do hereby exercise; * * *." Decedent died on October 12, 1940, before the death of his mother and the termination of the trust estate. Paragraphs 2 and 5 of the Trust provided as follows:

"2. The Co-Trustees shall have the sole right at their discretion to exercise on behalf of the trustees the following powers:

"(a) To sell any part of the trust estate and direct the reinvestment or distribution of the proceeds thereof or of any income, subject, however, to the provisions of Paragraph 5. * * *"

Paragraph 5 restricted the distribution of income or principal during the continuance, of the trust, to the two sons, or their heirs-at-law, and, in case the two sons predeceased her, provided that the income could be paid to the Settlor. By letter dated August 21, 1941, Caroline B. DuCharme resigned as a Co-Trustee. On August 25, 1941, Harold DuCharme, as sole surviving Co-Trustee, directed the petitioner in writing to sell certain designated securities in the trust estate and to distribute the proceeds from such sale one-half to himself

and one-half to the heirs-at-law of the decedent. The petitioner declined to follow these instructions without court approval and on August 26, 1941 filed a Bill of Complaint with the Circuit Court for the County of Wayne, Michigan, in chancery, making appropriate parties in interest defendants. On August 28, 1941, the state court issued its decree holding that the power of appointment related only to such property as was a part of the trust estate on the date of its termination, and that the death of Charles B. DuCharme and the exercise of the power by his will in no manner restricted the power of the sole remaining Co-Trustee to direct the sale and distribution of any part or all of the trust estate. During September 1941, the petitioner sold securities and distributed the net proceeds therefrom in the total amount of $378,675.41 as directed. Caroline B. DuCharme died on July 4, 1942, at which time the trust terminated. The value of the trust corpus at that time was $69,222.41. No amount was included in the decedent's estate tax return with respect to the one-half of the trust estate, over which decedent had the power of appointment. The Commissioner determined that $181,754.69 should be included in the decedent's estate on account of such power. The petitioner has stipulated that the amount of $28,090.11 should be included, which amount represents the value of the property in trust at its termination, reduced by the value of the estate intervening between decedent's death and the trust's termination. The Tax Court sustained the Commissioner's determination.

Section 811(f) of the Internal Revenue Code, before the 1942 amendment, is the controlling statute, and provides that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of—"(f) Property passing under general power of appointment. To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, * * *."

The Tax Court was of the opinion that one-half of the property in the trust estate was subject to the decedent's power of appointment, which the decedent exercised, and accordingly was covered by this statu-

tory provision. It held that property, in the nature of an executory interest, passing at the decedent's death under power of appointment; that such executory interest so passing was subject to powers of encroachment which might and did diminish its ultimate quantum but that this did not prevent the passing of such interest to the beneficiaries at decedent's death; that it was incorrect to construe the term "passing" as meaning passing into the possession and enjoyment of the appointees, as such a construction would require that the process of evaluation for estate tax purposes be postponed until the appointed property ultimately passed into the possession of the designated appointees. In our opinion this conclusion is contrary to the rulings of the Supreme Court in Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825 and Helvering v. Safe Deposit & Trust Company, 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513. As pointed out by the opinion in Helvering v. Grinnell, the statute requires (1) the existence of a general power of appointment; (2) an exercise of that power by the decedent by will; and (3) the passing of the property in virtue of such exercise. In that case, as in this, a general power of appointment existed and it was exercised by the decedent by will, but the property in question did not pass to the recipients of the property in virtue of such exercise. In that case the appointees under the exercised power renounced their right to receive the property under the exercise of the power and elected to take the property under the default provisions of the instrument creating the trust and the power. The Court rejected the contention of the Government that the tax was imposed upon the power to transmit property by death and that the shifting of the economic benefits of the property was the real subject of the tax. The Court said —"The tax here does not fall upon the mere shifting of the economic benefits in property, but upon the shifting of those benefits by a particular method, namely, by their '*passing* under a general power of appointment,' and not otherwise. Acceptance of the government's contention would strip the italicized word of all meaning." [294 U.S. 153, 55 S.Ct. 355] In the present case the property involved passed to the beneficiaries by reason of the provisions of the settlor's will which authorized the trustee to sell the property and distribute it to certain parties, instead of passing under the exercised power. This seems a necessary conclusion in that the recipients of the property took a different title, namely, one in fee, from what they would have taken if they had received it by virtue of the power of appointment, in which case it would have been merely an equitable interest in a trust estate. The Tax Court's ruling is no doubt largely based upon the fact that the decedent had died and his will exercising the power had become effective before the property was removed from the trust estate. But this view fails to give effect to the express provisions of Paragraph 8 of the Trust which continued the trust in effect for almost two years after the decedent's death, namely, the death of the mother, and provided that the properties and securities "then constituting the trust estate" should be transferred to the two sons or to their appointees. The power of appointment was expressly limited to the property remaining in the trust at the time of its termination. The property involved in this action was not a part of the trust estate at the time of its termination, and the exercise of the power had no effect upon it whatsoever. The contention, recognized to some extent by the Tax Court, that taxes should not be influenced by facts occurring after the exercise of the power is rejected by the ruling in Helvering v. Grinnell, supra, and also by the later ruling in Helvering v. Safe Deposit & Trust Company, supra. The court stated in the latter opinion—"Whatever may be the general rule in this respect, this Court has clearly recognized, in Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, that events subsequent to the decedent's death, events controlled by his beneficiaries, can determine the inclusion or not of certain assets within the decedent's gross estate under Section 302(f)." [316 U.S. 56, 62 S.Ct. 930] That case recognized and again applied the rule previously announced in the Grinnell case that even though the property was subject to the exercise of the power, and the power was actually exer-

966

cised in favor of the beneficiaries, yet if the beneficiaries took title in a manner other than under the power, such property so taken did not pass by the exercise of the power and was not to be included in the donee's gross estate. The rule of the Grinnell case has been subject to some criticism, but it does not appear that it has been withdrawn by the Supreme Court. For a discussion of the question, see Paul's Federal Estate and Gift Taxation, Sections 9.17-9.-22, 1942 Edition and 1946 Supplement. We do not believe that the later case Estate of Rogers v. Commissioner, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134, made any change in this rule. In that case the power of appointment was exercised by will and the beneficiaries took under that appointment. The opinion expressly differentiates the case from Helvering v. Grinnell, supra.

We are of the opinion that on this aspect of the case the ruling of the Tax Court was erroneous and should be reversed.

The ruling of the Tax Court is reversed and the case remanded to the Court for further proceedings consistent with the views hereinabove expressed.