ESTATE OF CARRIE GROSSMAN, TRIXY G. LEWIS, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58005.  Filed January 24, 1957.

*Naomi Ranson, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

### OPINION.

RAUM, *Judge:* Respondent has determined a deficiency in estate tax in the amount of $34,612.47 with respect to the Estate of Carrie Grossman, who died in 1951. The sole issue is whether the principal of a trust established by her in 1930 is includible in her gross estate under section 811 (d) (2) of the Internal Revenue Code of 1939. The facts have been stipulated.

On December 20, 1930, the decedent created a trust for the benefit of her three adult children (Lillian G. Lignante, Trixy G. Lewis, and William Leonard Grossman) naming herself as the sole trustee. The term of the trust was the settlor's life, but it was subject to termination as hereinafter indicated. The income was payable to the three children in accordance with a specified formula until November 1, 1933, and thereafter to be equally divided among them; and, in the event of death of a child, provision was made for payment of the income that would otherwise have been payable to such child. Upon termination of the trust, the entire corpus and unpaid income were

to be divided into three parts, one for each child; if any child should not then be living, then his or her share was to be paid over in accordance with a testamentary power of appointment given to such child, and, in default of appointment, to such child's next of kin.

The settlor, as trustee, retained broad powers of administration of the trust property. In addition, the trust instrument contained the following pertinent provisions:

III. Said Trustee may apply to the use of said LILLIAN G. LIGNANTE, TRIXY G. LEWIS and WILLIAM LEONARD GROSSMAN, or any one or more of them, so much of the principal or corpus of the trust as she, in her sole and uncontrolled discretion, may deem advisable. .

\*     \*     \*     \*     \*     \*     \*

IX. This trust shall be irrevocable; provided, however, that if during the existence thereof a majority of the children of the Settlor shall in writing signed by them, and addressed and delivered to said Settlor, request that this trust be terminated or revoked, and the principal thereof distributed to the persons and in the proportions designated in such writing, and if the Settlor shall in writing assent thereto, then this trust shall be terminated or revoked and the corpus of the trust distributed in accordance with such written request and assent; and no other beneficiary named herein shall have or be deemed to have any interest in this agreement or trust as shall have the effect of preventing its said revocation or termination by a written agreement as aforesaid between the Settlor and a majority of her three children.

In 1927, the decedent and her husband had created a trust, the terms of which closely paralleled those of the trust here in controversy. After the husband's death, the 1927 trust was terminated by a written request dated December 15, 1930, made by a majority of the beneficiaries and a written instrument dated December 20, 1930, in which the surviving spouse assented to termination. The assets of the 1927 trust then became the corpus of the 1930 trust which is now before us.[1]

The corpus of the 1930 trust at the date of the settlor's death had a value of $105,229.30, and it is the correctness of the Commissioner's action in determining that this amount is includible in her gross estate that is before us for review. The applicable statutory provision is set forth in the margin.[2]

---

[1] The settlor subsequently, in 1937, added securities valued at $38,258.66 to the 1930 trust. Such securities had previously been part of the corpus of a revocable trust established by the settlor in 1931.

[2] SEC. 811. GROSS ESTATE.
   (d) REVOCABLE TRANSFERS.—
   \*     \*     \*     \*     \*     \*     \*
   (2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph;

We think that the Commissioner's determination must be sustained by reason of either paragraph III or paragraph IX of the trust instrument. Paragraph III is phrased in sweeping terms. Thereunder, the decedent retained the power to "apply to the use of" her three children, "or any one or more of them, so much of the principal or corpus of the trust as she, in her sole and uncontrolled discretion, may deem advisable." That power is not limited, as contended by petitioner, to the "need" of any particular child (cf. *Matter of Wentworth*, 230 N. Y. 176, 129 N. E. 646), nor is the power so restricted that only one-third of the corpus could be paid over to any particular child. Paragraph III gives the decedent the broad power, in her sole and uncontrolled discretion, to pay over any part of the corpus for the benefit of any one of her children, thereby diminishing or even extinguishing the interests of the other beneficiaries. Plainly, such power is one "to alter, amend, or revoke" within the meaning of section 811 (d) (2). *Du Charme's Estate* v. *Commissioner*, 164 F. 2d 959, 169 F. 2d 76 (C. A. 6).

Moreover, wholly apart from the power spelled out in paragraph III, the provisions of paragraph IX are fatal to petitioner's position. Those provisions gave the settlor the power, acting in conjunction with a majority of her children, to terminate or revoke the trust. It is now well settled that a power to "terminate" is comprehended within a power to "alter, amend, or revoke" (*Lober* v. *United States*, 346 U. S. 335; *Commissioner* v. *Estate of Holmes*, 326 U. S. 480; *Thorp's Estate* v. *Commissioner*, 164 F. 2d 966 (C. A. 3), certiorari denied 333 U. S. 843); and it is irrelevant whether the decedent's participation initiates the termination, or, as here, is in the nature of a consent after others have set the machinery in motion, it being sufficient under the statute merely that she act "in conjunction" with the others (*Thorp's Estate* v. *Commissioner*, *supra*, at pp. 967–968; *Du Charme's Estate* v. *Commissioner*, 164 F. 2d 959, 962).

We do not agree with petitioner's final contention that, in any event, the amount to be included in the gross estate must be reduced by the value of the life estates of decedent's children. Even assuming such estates to be "vested" (cf. *Lober* v. *United States*, *supra*, at 336), all of them were clearly defeasible.[3]

The Commissioner's determination must be approved in all respects.

*Decision will be entered for the respondent.*

---

[3] The original holding of the Court of Appeals in *Du Charme's Estate* v. *Commissioner*, 164 F. 2d 959 (C. A. 6), relied upon by petitioner, that a life estate must be excluded, was modified on rehearing to reach the contrary result. 169 F. 2d 76.