**The BANK OF NEW YORK, as Executor of the Will of Grace A. Sedgwick, deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 67 Civ. 622.

United States District Court, S. D. New York.

July 9, 1970.

Emmet, Marvin & Martin, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., S. D. New York, New York City, for the

---

United States; Richard S. Rudick, Alan B. Morrison, Asst. U. S. Attys., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are cross-motions for summary judgment in an action brought by the executor of the estate of Grace A. Sedgwick for a refund of federal estate taxes. The parties agree that no factual issue exists and that the matter is ripe for summary judgment.

In 1907, Grace A. Sedgwick created a trust under which she transferred certain property to her trustee, she to receive the income for life. She retained a general testamentary power to appoint one equal half part of the trust. She also retained a limited testamentary power to appoint the balance of the trust fund to her issue or, in default of issue, to her surviving next of kin by blood under New York law, in such proportions and under such conditions as she saw fit, with express power to exclude some, but not all, of such surviving issue or next of kin. Provision was also made for disposition of the corpus or any part thereof in the event the powers of appointment were not effectively exercised. Additional transfers of property into the trust were made in subsequent years.

From December, 1920, until her death on June 23, 1961, decedent was confined to a hospital; she was adjudged an incompetent in the Supreme Court, New York County, on February 8, 1923. The adjudication was in effect at the date of her death. Decedent had no issue; her sole surviving next of kin was her sister, Susan, who is still alive and has two children. Accordingly, absent an effective exercise of the power of appointment, Susan, under applicable New York law, would be the sole distributee. The decedent's will, dated June 2, 1920, was admitted to probate and plaintiff, Bank of New York, qualified as executor in August, 1961. Under the will, decedent did exercise the power of appointment, and after making certain specific bequests, appointed the remainder to her sister Susan. An estate tax return was filed, in which the corpus of the trust was included in the gross estate. The parties agree that, as filed, this was error, since included therein were transfers made prior to September 7, 1916.[1] However, they disagree as to what was includable in the gross estate beyond that date. The Commissioner contends that the full amount of all additions to the corpus of the trust after September 7, 1916 is includable pursuant to section 2037(a) of the Internal Revenue Code, and made an assessment accordingly. The plaintiff contends that the entire corpus of the trust is excludable by virtue of section 2038(c) of the Code.

At issue is a narrow question as to the interrelationship of two inter vivos transfer sections of the gross estate provisions of the Internal Revenue Code of 1954. Section 2037,[2] entitled "Transfers taking effect at death," insofar as herein applicable, provides for inclusion

---

1. Int.Rev.Code of 1954, § 2037, the only estate tax section under which it is claimed the trusts are includable in the gross estate, excludes transfers in trust made prior to September 7, 1916.

2. Int.Rev.Code of 1954, § 2037:
   "(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time after September 7, 1916, made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, if—
   (1) possession or enjoyment of the property can, through ownership of

such interest, be obtained only by surviving the decedent, and
   (2) the decedent has retained a reversionary interest in the property (but in the case of a transfer made before October 8, 1949, only if such reversionary interest arose by the express terms of the instrument of transfer), and the value of such reversionary interest immediately before the death of the decedent exceeds 5 percent of the value of such property.
   (b) Special rules.—For purposes of this section, the term "reversionary interest" includes a possibility that property transferred by the decedent—

in the gross estate for estate tax purposes of the value of property transferred, in trust or otherwise after September 7, 1916, if (1) "possession or enjoyment of the property can, through ownership * * * be obtained only by surviving the decedent," and (2) the decedent, by the express terms of the instrument of transfer, has retained a reversionary interest of a value, immediately before his death greater than five percent of the value of the property. "Reversionary interest" as defined "includes a possibility that the property transferred by the decedent—(1) may return to him or his estate, or (2) may be subject to a power of disposition by him. * * *" Section 2038,[3] entitled "Revocable transfers," provides for inclusion in the gross estate of the value of all property transferred, by trust or otherwise, for which enjoyment was subject, at the date of the decedent's death, "to any change through the exercise of a [sole or joint power of the decedent] * * * to alter, amend, or revoke" the trust. However, section 2038(c) excludes from the operation of section 2038 certain retained powers with respect to the distribution of corpus or income only where the decedent was under a continuous mental disability to relinquish those powers from at least October, 1947, until the time of his death.

The statutes herein involved are derived from section 202(b) of the Revenue Act of 1916 [4] which provided:

"[T]he value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:

* * * * * *

(b) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * *." [5]

---

3. Int.Rev.Code of 1954, § 2038:

"(a) In general.—The value of the gross estate shall include the value of all property—

* * * * *

(2) Transfers on or before June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. * * *"

Section 2038(c) is printed in full in the text at page 1172 infra.

(1) may return to him or his estate, or

(2) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. * * *"

4. Revenue Act of 1916, ch. 463, tit. II, § 202(b), 39 Stat. 777–778.

5. This language was retained, with various modifications not here relevant, as § 302(c) of the Revenue Act of 1924, ch. 234, 43 Stat. 304, and later § 811(c) of the Internal Revenue Code of 1939, ch. 3, 53 Stat. 121. The 1924 Act also added a new § 302(d), which has survived virtually unchanged as § 811(d) (2) of the 1939 Code and then § 2038(a) (2) of the 1954 Code. In 1949, § 811(c) was modified to place certain limitations on the scope of the "possession or enjoyment" rule, see pages 1170–1172 infra, in the course of which that subsection was restructured. Act of Oct. 25, 1949, ch. 720, § 7(a), 63 Stat. 894–895, amending Int.Rev.Code of 1939, § 811(c). The basic "possession or enjoyment" language was retained as § 811(c) (1) (C). However, a new subsection, § 811(c) (2), added the "reversionary interest" language and the 5% rule, which now appear in § 2037 of the 1954 Code, as a limitation on § 811(c) (1) (C). Sections 811(c) (1) (C) and 811(c) (2) along with § 811(c) (3), governing post-1949 transfers) became § 2037 of the 1954 Code. See generally 2 J. Mertens, Law of Federal Gift & Estate Taxation § 20.01 (1959).

Section 202(b) and kindred provisions in subsequent acts are designed to "[sweep] into the gross estate all property the ultimate possession or enjoyment of which is held in suspense until the moment of the decedent's death or thereafter." [6]

### I.

The parties are agreed that the testamentary powers of appointment retained by decedent constitute powers to "alter, amend, or revoke" within the meaning of section 2038,[7] but that decedent's mental disability brings her within the terms of section 2038(c), thereby preventing inclusion under the revocable transfer section. Nonetheless, the government's submission is that section 2038(c) does not apply to section 2037—that the two provisions, despite overlapping, are distinct and separate, with different tests for determining inclusion or exclusion. The substance of the government's position is that the post-1916 transfers to the trust are includable in the gross estate on the authority of section 2037, upon the view that the testamentary powers of appointment constitute "reversionary interests" within the broad meaning of that section. These powers clearly do constitute reversionary interests under any traditional definition;[8] they also fit squarely within the expansive definition of section 2037(b). Because decedent

had the power, with certain limitations, to control the disposition of the corpus in her will, there was not just a "possibility" but a certainty that the "property transferred by the decedent * * may be subject to a power of disposition by" her. Plaintiff, without seriously disputing this, contends, however, that the reversionary interests subject to section 2037 are not such "actual" reversions but only "possibilities of reverter" and other such remote or contingent interests. Such a construction is untenable. The language of section 2037(b) does not purport to provide a limiting definition; to the contrary, it is expansive in stating that " 'reversionary interest' includes" more remote or contingent interests.[9] To read "includes" to mean "limited to," as plaintiff would, is to give the words of that section a strained and unnatural construction. To accept plaintiff's thesis would do violence to plain language by reading "includes" to mean "excludes." The statutory history of section 2037 bears out what the words in any event dictate. Under the original 1939 Internal Revenue Code and earlier Revenue Acts there was no express reference to "reversionary interest." Inclusion of the transferred property in the gross estate on the basis of such a retained interest was required under the generic "possession or enjoyment" language.[10] In Commissioner of Internal Revenue v. Estate of

---

6. Goldstone v. United States, 325 U.S. 687, 691, 65 S.Ct. 1323, 1325, 89 L.Ed. 1871 (1945).

7. See Adriance v. Higgins, 113 F.2d 1013, 1014–1015 (2d Cir. 1940) (construing § 302(d) of the Revenue Act of 1926); Commissioner v. Chase Nat'l Bank, 82 F.2d 157 (2d Cir.), cert. denied, 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407 (1936).

8. See Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782 (1945) (contingent testamentary power of appointment); Costin v. Cripe, 235 F.2d 162 (7th Cir. 1956) (contingent, nonbeneficial power of appointment; construing § 811(c) (2)): Estate of Middlekauff, 2 T.C. 203 (1943)

(contingent testamentary power of appointment) (semble); cf. City Bank Farmers Trust Co. v. Miller, 278 N.Y. 134, 15 N.E.2d 553 (1938).

9. See 3 J. Mertens, supra note 5, § 23.18 at 347 n. 82.

10. See, e. g., Estate of Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330 (1949); Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940); cf. Commissioner v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786 (1945); Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782 (1945). See generally Costin v. Cripe, 235 F.2d 162 (7th Cir. 1956).

Church [11] and Estate of Spiegel v. Commissioner of Internal Revenue,[12] the Supreme Court gave to that language an extremely expansive reading: [13]

> "[A]n estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter."

It was argued to the Court that where the monetary value of a contingent reversionary interest was small in comparison with the total value of the corpus, the transfer should not be included. But the Court rejected that argument: [14]

> "The question is not how much is the value of a reservation, but whether after a trust transfer * * * some present or contingent right or interest in the property still remains in the settlor so that full and complete title, possession or enjoyment does not absolutely pass to the beneficiaries until at or after the settlor's death."

In 1949 Congress amended the Code, providing that a transfer intended to take effect in possession or enjoyment at or after death should not be included in the gross estate unless the decedent retained, by the express terms of the instrument of transfer, a reversionary interest of a value, immediately before the death of a grantor, in excess of five percent of the value of the property. "Reversionary interest" was further defined, as in the present section 2037(b), to include the more remote possibilities that the property might return to the grantor or his estate or be subject to the grantor's disposition.[15] The committee reports accompanying the amendments, wherein explicit reference to the *Church* and *Spiegel* decisions was made, show that the purpose was to relieve taxpayers of large estate taxes incurred solely on account of retained interests whose actual values were insignificant.[16] To achieve that purpose, Congress fashioned additional requirements to exclude remote or unanticipated retained interests, while accepting a broad formulation of "reversionary interest" compatible with the earlier case law.[17] But in amending the "possession or enjoyment" section with respect to remote or contingent interests, Congress certainly evinced no purpose to limit it to those interests alone. Such an "actual" reversion as is involved here, which within the meaning of the earlier cases is clearly a reversionary interest limiting the possession and enjoyment of the beneficiaries in the trust property during the life of the decedent, is among the least questionable interests falling

---

11. 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949).

12. 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330 (1949).

13. Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 645, 69 S.Ct. 322, 329, 93 L.Ed. 288 (1949); see Estate of Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 705, 69 S.Ct. 301, 93 L.Ed. 330 (1949).

14. Estate of Spiegel v. Commissioner of Internal Revenue, 335 U.S. 701, 707, 69 S.Ct. 301, 93 L.Ed. 330 (1949).

15. Act of Oct. 25, 1949, ch. 720, § 7(a), 63 Stat. 894–895 amending Int.Rev.Code of 1939, § 811(c).

16. See S.Rep.No.831, 81st Cong., 1st Sess. (1949); Conf.Rep.No.1412, 81st Cong., 1st Sess. (1949). The initial Senate amendment would have included in the gross estate only the value of the interest retained; the final bill which emerged from conference substituted inclusion of the entire value of the corpus, in conformity with existing law, subject to complete exclusion if the reversionary interest did not exceed 5% of the value of the corpus.

17. Estate of Klauber, 34 T.C. 968, 974 (1960). See generally Bittker, Church and Spiegel: The Legislative Sequel, 59 Yale L.J. 395, 397–413 (1950); 3 J. Mertens, supra note 5, §§ 23.18–.19.

within section 2037. Plaintiff's argument on this score is without merit.

## II

Plaintiff's more substantial argument is that, even if the retained powers fall within the literal scope of section 2037, they should not result in inclusion due to the effect of section 2038(c). That subsection reads in full:

"For purposes of this section [§ 2038], in the case of a decedent who was (for a continuous period beginning not less than 3 months before December 31, 1947, and ending with his death) under a mental disability to relinquish a power, the term 'power' shall not include a power the relinquishment of which on or after January 1, 1940, and on or before December 31, 1947, would, by reason of section 1000(e) of the Internal Revenue Code of 1939, be deemed not to be a transfer of property for purposes of chapter 4 of the Internal Revenue Code of 1939."

The meaning of this obscurely worded provision may be derived from certain developments just prior to and under the 1939 Internal Revenue Code.

In 1939 the Supreme Court decided a pair of cases dealing with the gift tax laws: Estate of Sanford v. Commissioner of Internal Revenue[18] and Rasquin v. Humphreys.[19] Both cases involved inter vivos trusts of personal property in which the grantor had reserved to himself the power to modify the terms of the trust, including the power to change beneficiaries, but not the power to revoke the trust and revest the corpus in himself.[20] The Court ruled that the transfers were not complete for gift tax purposes so long as the donor retained any power to alter their disposition, even in a manner nonbeneficial to himself. Hence a gift tax was assessable at the time the power to modify was relinquished. The effect of these decisions was to lock in certain individuals who had made gifts in trust, retaining such nonbeneficial powers: if they retained the powers, the value of the corpus would be included in their gross estates and the transfers taxed under the estate tax laws;[21] if they relinquished the powers, a gift tax would immediately become due on the entire corpus even though the settlor believed the initial transfer into trust to be wholly or partially tax-free.[22] Congress, believing this situation to be inequitable for individuals who had planned their estates in reliance upon incurring no further gift tax liability after the initial transfers,[23] thereafter added section 1000(e) to the gift tax chapter of the 1939 Internal Revenue Code.[24]

18. 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939).

19. 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77 (1939).

20. Taxpayer in *Sanford* had also retained a power to revoke the trust, but had relinquished that power in 1919, prior to the time the gift tax went into effect.

21. Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880 (1933); Int.Rev.Code of 1939, ch. 3, § 811(d), 53 Stat. 121 (now Int. Rev.Code of 1954, § 2038).

22. The initial transfers into trust might have been deemed free of gift tax for a number of reasons. In *Sanford*, for example, the initial transfer was made at a time when no gift tax was in effect. There might also have been no gift tax imposed if the transfers were made not in a lump sum but in small increments, each less than the statutory exclusion. *See, e. g.*, Revenue Act of 1932, ch. 209, § 504(b), 47 Stat. 247 ($5000 exclusion); Revenue Act of 1924, ch. 234, § 321(a) (3), 43 Stat. 314 ($500 deduction). *But cf.* Supplee v. Smith, 242 F.2d 855, 859–860 (3d Cir. 1957), overruling Commissioner of Internal Revenue v. Krebs, 90 F.2d 880 (3d Cir. 1937) (no exclusion for gifts into trust under 1932 Act).

23. S.Rep.No.627, 78th Cong., 1st Sess. 92–94 (1943); *see* Supplee v. Smith, 242 F.2d 855, 857–859 & n. 5 (3d Cir. 1957).

24. Revenue Act of 1943, ch. 63, § 502(a), 58 Stat. 71 (1944), as amended, Joint Resolution of June 25, 1947, ch. 143, § 2(a), 61 Stat. 178. The amended text

That section permitted certain settlors of trusts created prior to January 1, 1939, who retained, at that date, a non-beneficial power over corpus or income, to relinquish that power at any time between January 1, 1940, and December 31, 1947,[25] without incurring thereby further gift tax liability. As a result, such individuals would be able to "complete" the inter vivos transfer and avoid estate tax liability as well.[26]

Section 1000(e) could not be availed of by that class of individuals who had retained nonbeneficial powers to alter or amend but, because of mental incompetency, were unable to relinquish such powers during the grace period. To eliminate this further inequity to such individuals, Congress added to the revocable transfer section of the Code the exemption which became section 2038(c).[27] The committee reports ac-

companying the amendment indicate a remedial purpose to place incompetent individuals on an equal footing with those competent to relinquish their retained powers.[28] Congress reasoned that " * * * had the persons involved been mentally competent, they undoubtedly would have relinquished their powers within the prescribed period, and as a result would have paid neither a gift tax nor had the property in question included in their gross estate for estate tax purposes." [29]

The testamentary powers of appointment retained by the present decedent are among the type of powers which might have been relinquished without the imposition of a gift tax under section 1000(e).[30] Because inclusion of the trust corpus in the gross estate in this case is predicated solely upon retention of those powers,[31] which alone bring

---

of § 1000(e) reads:

"In the case of property in a trust created prior to January 1, 1939, if on and after January 1, 1939, no power to revest title to such property in the grantor could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom, then a relinquishment by the grantor on or after January 1, 1940, and on or before December 31, 1947 * * * of power or control with respect to the distribution of such property or the income therefrom by an exercise or other termination of such power or control shall not be deemed a transfer of property for the purposes of this [gift tax] chapter."

The text further provides that if a gift tax was in effect at the time the original transfer in trust was made, or at the time a power to revest was relinquished, section 1000(e) will apply only if a gift tax was paid or a gift tax return filed and the grantor consents to treat the transfer or relinquishment for all purposes as a transfer of property subject to gift tax. *See* Supplee v. Smith, 242 F.2d 855 (3d Cir. 1957).

25. The period during which the power could be relinquished free of gift tax was originally January 1, 1940 to January 1, 1945, but was extended by the 1947

amendment to December 31, 1947. *See* note 24 *supra.*

26. *See* S.Rep.No.685, 83d Cong., 1st Sess. (1953); H.R.Rep.No.894, 83d Cong., 1st Sess. (1953), U.S.Code Cong. & Admin. News 1953, p. 2423; S.Rep.No.478, 86th Cong., 1st Sess. (1959); H.R.Rep.No. 83, 86th Cong., 1st Sess. (1959), U.S. Code Cong. & Admin.News 1959, p. 2036.

27. Technical Changes Act of 1953, ch. 512, tit. II, § 208(a), 67 Stat. 623, amending Int.Rev.Code of 1939, § 811(d). A similar provision was omitted in the original 1954 Code, but was added in 1959. Act of Aug. 7, 1959, Pub.L.No. 86–141, § 1. 73 Stat. 288–289, amending Int.Rev.Code of 1954, § 2038.

28. *See* S.Rep.No.478, 86th Cong., 1st Sess. (1959); H.R.Rep.No.83, 86th Cong., 1st Sess. (1959); S.Rep.No.685, 83d Cong., 1st Sess. (1953); H.R.Rep.No. 894, 83d Cong., 1st Sess. (1953).

29. H.R.Rep.No.83, *supra* note 28.

30. Estate of Marshall, 51 T.C. 696, 703–706 (1969); Estate of Canfield, 34 T.C. 978, aff'd on other grounds, 306 F.2d 1 (2d Cir. 1962), acquiesced in, 1963–1 Cum.Bull. 3.

31. Decedent also retained a life estate in the trust income, which would normally provide an independent basis for inclusion of the corpus in her gross estate. Int.Rev.Code of 1954, § 2036. But § 2036

the transfers within both sections 2037 and 2038, had decedent taken advantage of section 1000(e) to relinquish the powers, free of gift tax, she would have avoided entirely estate tax liability on this property. Her mental disability foreclosed any action on her part. Plaintiff here contends, and this court agrees, that inclusion of those transfers in decedent's gross estate under section 2037 would defeat the beneficent congressional purpose clearly spelled out in section 2038(c), for it is just such a situation as this that that section was enacted to remedy. The intent of section 2038(c), which this court must try to effectuate, is that to the extent that decedent retained a power within the scope of section 1000(e) which, if released, would have avoided estate tax liability, it is to be presumed that such power would have been released and the liability thereby avoided, and hence the estate will be treated as if the power had been released. The result of such treatment in the present case must be to take the post-1916 transfers into the trust out of decedent's gross estate.

The government does not attempt to meet plaintiff's contention based upon the purpose of section 2038(c); rather, it argues, as already noted, that sections 2037 and 2038 are separate, albeit at times overlapping, sections and that inclusion of property is frequently possible under a number of the inter vivos transfer sections. It contends, quite correctly in view of the explicit statutory language, that section 2038(c) is not by its terms applicable to section 2037. But that is not an answer here, for the government's argument misconceives the relationship between the two sections.

Where the grantor of an inter vivos trust retains to himself a number of interests which make the transfer less than complete—such as a life estate in the income, a power to revoke the trust, and a possibility of reverter—the transfer may properly fall within more than one of the inter vivos transfer sections; the inapplicability of any one of those sections to any particular retained interest will not result in exclusion if another such interest falls within the terms of that or another section.[32] The government seeks to invoke that principle here, but in this case it is of no relevance, for there is only a single retained interest involved—the testamentary powers of appointment. The relevant inquiry is whether the two sections which appear to read on that interest, and which produce quite different tax consequences, are on these facts equally applicable.[33] The court finds that they are not.

As noted above, both sections 2037 and 2038 find their source in the "possession or enjoyment" rule of section 202(b) of the Revenue Act of 1916. Section 2037 essentially embodies that

(b) expressly excludes this aspect of the transfer as a factor for transfers prior to March 4, 1931. Thus only the testamentary powers of appointment are at issue here.

32. *See, e. g..* Estate of Coulter, 7 T.C. 1280, 1285–92 (1946); 2 J. Mertens, *supra* note 5, § 13.10. Insofar as the retained life estate is concerned, *see* note 31 *supra*, that is the case here. The inapplicability of § 2036 does not preclude inclusion on account of the retained testamentary powers of appointment. *See* Estate of Coulter, *supra.*

33. *Compare* Du Charme's Estate v. Commissioner of Internal Revenue, 164 F.2d 959 (6th Cir. 1947), modified on other grounds, 169 F.2d 76 (6th Cir. 1948), *and* Adriance v. Higgins, 113 F.2d 1013, 1016–1017 (2d Cir. 1940), *and* Estate of Cooper, 7 T.C. 1236 (1946), *and* Estate of Wilson, 42 B.T.A. 1196 (1940) (single interest properly includable under more than one section), *with* Estate of Koussevitsky, 5 T.C. 650, 658–662 (1945), *and* Estate of Wade, 47 B.T.A. 21 (1942) (single interest; special provisions of one section control to exclusion of other sections). Of course, where a single interest may be included within more than one section with no difference in tax consequences, no choice need be made amongst those sections; they are, in a sense, equally applicable because not in conflict. The cases which have approved multiple inclusion of the same interest may be explained on that ground.

general rule, although following the *Church* and *Spiegel* cases Congress added the limitation, among others, that the retained reversionary interest have a substantial (greater than 5%) value in relation to the corpus as a whole.[34] The revocable transfer provision, on the other hand, represents a particular application of the "possession or enjoyment" principle, which Congress as early as 1924[35] chose to single out for treatment in a separate subsection.[36] In such a situation, where Congress has singled out a particular type of interest for special or individual treatment, the courts will generally give effect to the congressional will and look to the more specific enactment where applicable rather than to the more general one.[37] That rule of construction has been applied in regard to the gross estate sections of the estate tax laws to preclude application of a general section when a more specifically applicable section results in special tax consequences.[38] There is no dispute that the testamentary powers of appointment retained by decedent are powers to "alter, amend, or revoke" within the meaning of sec-

tion 2038, although they additionally give rise to a reversionary interest limiting the possession and enjoyment of the beneficiaries in the trust property during decedent's lifetime within the expansive meaning of section 2037. Noninclusion under section 2038 because of the operation of subsection (c) is based not upon the nature of the retained powers but solely on the disability of the decedent which Congress has found worthy of specific relief; that section is fully applicable and sets out a special rule for a case such as this.[39] In fact, the existence of that special rule, which, as the prior discussion demonstrates, was designed to provide relief in this very type of situation, reinforces the inference that Congress intended to deal with these powers only in section 2038. Accordingly, the court finds that section 2038, rather than section 2037, is the governing section and hence the post-1916 transfers into trust are not includable in the gross estate of the decedent.

The plaintiff's motion for summary judgment is granted.

34. *See* pages 1170–1171 *supra.*

35. Revenue Act of 1924, ch. 234, § 302 (d), 43 Stat. 304. *See* note 5 *supra.*

36. For the proposition that the revocable transfer section may be substantially derived from the generic "possession or enjoyment" section, *compare* Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929), *with* Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 77 L. Ed. 880 (1933); *see* B. Bittker, Federal Income, Estate and Gift Taxation 1143 (1964); 2 J. Mertens, *supra* note 5, § 13.09 at 60 & n. 83; *cf.* Trust Co. of Georgia v. Allen, 164 F.2d 438, 442 (5th Cir. 1947), cert. denied, 333 U.S. 856, 68 S.Ct. 734, 92 L.Ed. 1136 (1948); Tait v. Safe Deposit & Trust Co., 74 F.2d 851, 858 (4th Cir. 1935).

37. Essenfeld v. Commissioner of Internal Revenue, 311 F.2d 208, 209–210 (2d Cir. 1962); *see* United States v. Chase, 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117 (1890); *cf.* Bulova Watch Co. v. United States, 365 U.S. 753, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961).

38. *See* Estate of Koussevitsky, 5 T.C. 650, 658–662 (1945); Estate of Wade, 47 B. T.A. 21 (1942).

39. The case would, of course, be different if the testamentary powers to "alter, amend, or revoke" did not come within the scope of section 2038. *See* Trust Co. of Georgia v. Allen, 164 F.2d 438 (5th Cir. 1947), cert. denied, 333 U.S. 856, 68 S.Ct. 734, 92 L.Ed. 1136 (1948). *But see* Commissioner of Internal Revenue v. Flanders, 111 F.2d 117, 120 (2d Cir. 1940) (dictum).